IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-CV-2059 JWL/DJW |
| | ) | |
| WESTAR ENERGY, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**MOTION OF SIERRA CLUB FOR INTERVENTION**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24**

The Sierra Club hereby moves to intervene as a party plaintiff in the above-captioned case pursuant to Federal Rule of Civil Procedure 24. Applicant Sierra Club meets the requirements for intervention of right under Federal Rule of Civil Procedure 24(a), or, in the alternative, permissive intervention under Rule 24(b). A proposed complaint in intervention is attached.

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

**I. BACKGROUND**

This is an action brought by the United States of America against Westar Energy, Inc., for violations of the Clean Air Act (the "Act"), 42 U.S.C. §§ 7401-7671q, at the Jeffrey Energy Center, a large coal-fired power plant.[1] The United States seeks injunctive relief and civil

---

[1] Under the Clean Air Act, any major emitting facility, which includes stationary sources of air pollutants, located in an area of the country that has already achieved the national ambient air quality standards, such as Kansas, must

1

penalties for violations of (1) the Act's Prevention of Significant Deterioration ("PSD") requirements, 42 U.S.C. §§ 7470-7492, (2) the permit requirements of Title V of the Act, 42 U.S.C. 7661-7661f, and (3) the state implementation plan (SIP) adopted by the State of Kansas and approved by the Environmental Protection Agency, pursuant to 42 U.S.C. 7410. Complaint ¶ 2.

## II. THE SIERRA CLUB IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT

The Sierra Club may intervene as plaintiff in this action as of right pursuant to Federal Rule of Civil Procedure Rule 24(a)(1). Rule 24(a) provides that, "[o]n timely motion," any person may intervene who:

> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). The Clean Air Act's citizen suit provision provides the Sierra Club with an unconditional right to intervene sufficient to support intervention pursuant to Rule 24(a)(1). Sierra Club's interest in this suit also justifies intervention of right under Rule 24(a)(2), especially in light of the "somewhat liberal line" the Tenth Circuit follows "in allowing intervention." *WildEarth Guardians v. U.S. Forest Service*, 573 F.3d 992, 995 (10th Cir. 2009).

### A. This Application is Timely

Sierra Club's motion meets the requirements for timeliness. Timeliness is determined "in light of all of the circumstances, [ ] including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence

---

obtain a prevention of serious deterioration ("PSD") permit prior to making certain modifications to an existing facility. *See* 42 U.S.C. §§ 7471; 7407(d)(1)(A)(ii); 7475(a)(1); 7410(a)(2)(C), (D); 7479(1), (2)(C); 7411(a)(2), (3), (4). The PSD program has been adopted by the state of Kansas. See KAR 28-19-350.

of any unusual circumstances." *Sanguine Ltd. v. U.S. Dept. of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984) (citations omitted). "'The analysis is contextual; absolute measures of timeliness should be ignored.'" *Utah Assn. of Counties. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quoting *Sierra Club v. Espy,* 18 F.3d 1202, 1205 (5th Cir. 1994)).

Because of the relatively early stage of this case, granting Sierra Club's motion will not prejudice the existing parties. *See Utah Assn. of Counties*, 255 F.3d at 1250-51(granting intervention motion filed in 2000 for case filed in 1997 due to relatively early stage of litigation and lack of prejudice to other parties from lapse of time). The court has entered a scheduling order that sets the deadline for filing dispositive motions for September 17, 2010, the discovery cutoff for October 13, 2010 and the trial date for January 4, 2011. These dates are distant enough that Sierra Club's participation in the action will not unfairly burden any existing party. Moreover, because an intervenor "must accept the proceedings as he finds them," no delay would be caused by relitigation of issues already decided. *Sierra Club v. Espy*, 18 F.3d at 1206 n.3 (quoting *In re Geisser*, 554 F.2d 698, 705 n.6 (5th Cir. 1977)).

Sierra Club will suffer prejudice if it is not allowed to intervene in this action. As discussed below in Section II.C, the existing parties to the lawsuit will not protect Sierra Club's interests in safeguarding its members from dangerous air pollution and preserving their right to participate in the permitting process. Sierra Club's motion is, accordingly, timely.

### B.     The Clean Air Act Grants Sierra Club the Unconditional Right to Intervene

Sierra Club has an unconditional right to intervene in this action. Section 304(b)(1)(B) of the Act expressly provides that "any person may intervene as a matter of right," where "the Administrator or State has commenced and is diligently prosecuting a civil action in a court of

the United States . . . to require compliance with [an emissions] standard, limitation, or order [under the Act]," 42 U.S.C. § 7604(b)(1)(B). *See Baughman v. Bradford Coal, Inc.*, 592 F.2d 215, 219 (3rd Cir. 1979)("Section 7604(b)(1)(B) provides that where an agency commences an action in federal court, citizens may intervene in those proceedings 'as a matter of right.'") (emphasis omitted). *Accord Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 467 (6th Cir. 2004).

This is such a case. The United States' complaint seeks to enforce the Act's PSD provisions, Title V of the Act, and Kansas' State Implementation Plan. Complaint ¶ 1. These claims support an unconditional right to intervene because they seek to enforce "emissions standard[s] or limitation[s]" within the meaning of Section 304(a)(1) and (b)(1)(B). The definition of "emission standard or limitation" includes, *inter alia,* "any . . . standard, limitation, or schedule established under . . . any applicable State implementation plan approved by the Administrator," and "any requirement to obtain a permit as a condition of operations." 42 U.S.C. § 7604(f)(4). The Clean Air Act thus provides a "statutory right of intervention," which is "unconditional because Section 304(b)(1)(B) states that . . . 'any person may intervene *as a matter of right.'*" *United States v. Duke Energy Corp.*, 171 F. Supp. 2d 560, 565 (M.D.N.C. 2001)(emphasis in original).[2] That unconditional right of intervention in EPA enforcement actions entitles the Sierra Club to intervene in this action under Rule 24(a)(1).[3]

---

[2] The allegation in the United States' complaint that Westar has modified its generating units "without first obtaining appropriate permits authorizing this construction and without installing and employing the best available control technology ('BACT') to control emissions," Complaint ¶ 2, falls under Section 304(a)(1) and (b)(1)(B), as well as under a separate part of the Act's citizen suit provision (Section 304(a)(3)) that does not provide an automatic right to intervene. *See Duke Energy Corp.,* 171 F. Supp. 2d at 565. *See also* 42 U.S.C. § 7604(b)(1)(B) (providing right to intervene in claims described by section 304(a)(1)). In light of "[t]he clear overlap contemplated between those two sections of the citizen suit provision," the Act "provides . . . a statutory right of intervention" in suits (such as this one) proceeding under both sections. *Duke Energy Corp.,* 171 F. Supp. 2d at 565.

[3] In applying a nearly identical provision of the Clean Water Act, the Sixth Circuit held that it "confers upon all applicants an unconditional right to intervene under Rule 24(a)(1)." *Ohio ex rel. Brown v. Callaway*, 497 F.2d 1235, 1242 (6th Cir. 1974). See also *Karr v. Hefner*, 475 F.3d 1192, 1195 (10th Cir. 2007)(noting that while EPA's suit precluded a citizen's suit filed the same day, the citizens "had the right under [33 U.S.C.] §1365(b)(1)(B) to intervene in EPA's action").

### C. The Sierra Club's Interest Justify Intervention of Right

The Sierra Club possesses an "interest relating to . . . the subject of [this] action" sufficient to support intervention of right under Rule 24(a)(2). A timely motion to intervene must be granted as a matter of right if the applicant (a) shows an interest in the action; (b) demonstrates that the interest may be impaired by the disposition of the action; and (c) show that the interest is not protected adequately by existing parties to the action. Fed. R. Civ. P. 24(a)(2); *Coalition of Arizona/New Mexico Counties v. Dept. of Interior*, 100 F.3d 837, 840 (10th Cir. 1996). These factors should be construed liberally in favor of intervention. *Turn Key Gaming Inc. v. The Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999).

#### 1. The Sierra Club has a Protectable Interest in this Action.

"The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention." *San Juan County, Utah v. U.S.*, 503 F.3d 1163, 1193 (10th Cir. 2007)(*en banc*). Sierra Club is a national nonprofit environmental organization founded in 1892 with over 600,000 members, including approximately 4,300 members in Kansas. Sierra Club members who live near the Jeffrey Energy Center are directly affected by air pollution from the plant. *See* Declarations of Gary Anderson and Bill Cutler, attached hereto. As a result of the violations alleged by the United States, Sierra Club's members have been exposed to increased levels of air pollutants including sulfur dioxide (SO2), nitrogen oxides (NOx) and particulate matter (PM). Those pollutants cause respiratory and pulmonary diseases and increased mortality and morbidity.[4]

---

[4] American Lung Association, "State of the Air: 2006." *See also* 71 Fed. Reg. 6,114, 6,178-9 (Oct. 17, 2006) (discussing health effects of particulate matter); 61 Fed. Reg. 25,566, 25,570-25,576 (May 22, 1996) (discussing effects of sulfur dioxide); 71 Fed. Reg. 8,962, 8,963 (February 22, 2006) (discussing health effects of NOx).

One of the Sierra Club's major national objectives is to prevent the harmful health and environmental impacts caused by burning coal to generate electricity; the Sierra Club is currently engaged in a campaign to limit pollution from coal-fired power plants nationwide through legislative and regulatory advocacy and litigation.[5] One of the primary means by which the Sierra Club has pursued this objective is through encouraging its members to participate in Clean Air Act permitting proceedings.[6] Those proceedings allow individuals to have input on, *inter alia,* the amount of pollution a source emits, required pollution controls, and alternatives to the project. *See* 42 U.S.C. §§ 7475(a)(2), 7661a(b)(6).  By evading the permitting requirements, Westar has avoided such public scrutiny and has deprived Sierra Club members of the opportunity to advocate for pollution reduction and cleaner alternatives during permitting proceedings.

Sierra Club's interests in protecting its members from harmful air pollution and in preserving their right to participate in the permitting process are sufficient to support Sierra Club's right to intervene in this case.  *Coalition of Arizona/New Mexico Counties*, 100 F.3d at 841-42 (finding conservation interest sufficient to support right to intervene when statute provided numerous opportunities for private citizens to protect those interests). *See also San Juan Cty.,* 503 F.3d at 1199 ("We think it indisputable that [a group]'s environmental concern is a legally protectable interest.").

**2. The Sierra Club's Interest May Be Impaired By the Disposition of this Case.**

---

[5] In furtherance of these objectives, Sierra Club's Beyond Coal campaign has taken action to reduce pollution at some of the nation's dirtiest coal-fired electric generation plants, including intervention in Clean Air Act enforcement actions brought by the United States. *See generally* http://www.sierraclub.org/coal (last visited September 28, 2009). Those actions include legislative, regulatory and public education advocacy to improve air quality in Kansas by preventing construction of new coal-fired electric plants and limiting emissions from existing plants. *See* http://kansas.sierraclub.org/Issues/EnergyFacts.htm (last visited on September 28, 2009).
[6] http://www.sierraclub.org/environmentallaw/coal/plantlist.asp (last visited September 29, 2009).

The disposition of the case has the potential to impair Sierra Club's interests. "'To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal.'" *Utah Assn. of Counties*, 255 F.3d at 1253 (citations omitted). If the court holds that the facility modifications do not trigger Clean Air Act permitting requirements, Westar will continue to emit increased air pollution, posing a health risk to Sierra Club members and depriving them of their right to have a say in the permitting process. The outcome of this litigation could, therefore, impair both the Sierra Club's interests in the health and well-being of its members, as well as its broader interest in avoiding pollution from coal-based electricity generation. *See San Juan Cty.*, 503 F.3d at 1201 ("[T]he requirements for intervention may be relaxed in cases raising significant public interests.").

### 3. The Existing Parties Do Not Adequately Represent Sierra Club's Interest.

The burden of showing inadequate representation is the "minimal one of showing that representation may be inadequate. The possibility that the interests of the applicant and the parties may diverge need not be great in order to satisfy this minimal burden." *Utah Assn. of Counties*, 255 F.3d at 1254 (citations and internal quotations omitted). Where the government, by statute or otherwise, "is obligated to consider a broader spectrum of views, many of which may conflict with the particular interest of the would-be intervenor," the would-be intervenor meets "the minimal burden of showing that [its] interests may not be adequately represented by the existing parties." *San Juan Cty.*, 503 F.3d 1163, 1204 (citation omitted).

The Clean Air Act's Prevention of Significant Deterioration regime instructs the United States to balance environmental and economic considerations; those diverging mandates meet the "minimal burden" necessary to show inadequate representation. *Id.* The Clean Air Act's PSD

7

regime requires the government both to "protect public health and welfare" from the adverse effects of air pollution, and "to insure that economic growth will occur in a manner consistent with the preservation of existing clean air resources." 42 U.S.C. § 7470(1)&(3). "Congress believed that [the Act's] PSD provisions should balance the values of clean air, on the one hand, and economic development and productivity, on the other . . . ." *Natural Resources Defense Council v. EPA*, 937 F.2d 641, 645-46 (D.C. Cir. 1991). As a result, the government "must, as it [has] recognized . . . , balance the *potentially conflicting goals* . . . to protect air quality and to promote economic growth." *Environmental Defense v. EPA,* 489 F.3d 1320, 1330 (D.C. Cir. 2007).

The United States does not, therefore, adequately represent Sierra Club's interest; where, as here, the applicable federal statute requires the government to weigh an applicant's interests against potentially conflicting concerns, its representation is inadequate and the applicant may intervene of right. *San Juan Cty.*, 503 F.3d at 1204.

### D.     In the Alternative, Sierra Club Should Be Granted Permissive Intervention.

In the alternative, Sierra Club seeks permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). Sierra Club's participation will not prejudice any party, nor will it unduly delay these proceedings. Sierra Club possesses substantial legal and technical expertise, which may assist the Court in the resolution of this matter. Indeed, over the past nine years the Sierra Club has sought to enforce the Clean Air Act against coal-fired utilities more frequently, and in a broader variety of venues, than the United States.[7] The Sierra Club's participation will, accordingly, allow it to protect its substantial interests in environmental protection, while assisting the Court in the resolution of the case.

---

[7] *See, e.g.,* http://www.sierraclub.org/environmentallaw/coal/plantlist.asp (last visited September 29, 2009).

## CONCLUSION

For the foregoing reasons, Sierra Club respectfully requests that its motion to intervene be granted.

Respectfully submitted,

/s/   Robert V. Eye_____
ROBERT V. EYE
KELLY J. KAUFFMAN
KAUFFMAN & EYE
112 S.W. 6th Avenue, Suite 202
Topeka, KS 66603-3850
PHONE: (785) 234-4040
FAX: (785) 234-4260
EMAIL: bob@kauffmaneye.com

/s/   Joanne Spalding_____
JOANNE SPALDING
(CA Bar No. 169560, *pro hac vice* pending)
SANJAY NARAYAN
(CA Bar No. 183227, *pro hac vice* pending)
SIERRA CLUB
85 Second Street, Second Floor
San Francisco, CA 94105-3456
PHONE: (415) 977-5725
FAX: (415) 977-5793
EMAIL: joanne.spalding@sierraclub.org
           sanjay.narayan@sierraclub.org