IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Case No. 2:09-CV-2059-JAR-DJW |
| | ) |
| WESTAR ENERGY, INC., | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

## WESTAR ENERGY, INC.'S MEMORANDUM OPPOSING SIERRA CLUB'S MOTION TO INTERVENE

Defendant Westar Energy, Inc. ("Westar") opposes Sierra Club's Motion to Intervene. (Doc. No. 37: Mot. to Intervene.)  This Memorandum explains why the Court should deny Sierra Club's motion.

### STATEMENT OF THE CASE AND RELEVANT FACTS

On February 4, 2009, the United States, on behalf of the Environmental Protection Agency ("EPA"), filed this civil enforcement action against Westar alleging violations of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7470-7492, 7661-7661f.  Specifically, EPA alleges that Westar performed "major modifications" to its existing coal-fired power plant in St. Marys, Kansas, without first obtaining the necessary "New Source" permits under the CAA and the Kansas State Implementation Plan ("SIP").  (Doc. No. 1: Compl. ¶ 2.)  Westar has answered, the Court entered a Scheduling Order, and the parties have begun conducting discovery.

On September 30, 2009, Sierra Club filed a Motion to Intervene seeking to become an additional plaintiff.  It claims to have an unconditional right to intervene under Federal Rule of Civil Procedure 24(a), or, in the alternative, seeks permissive intervention under Rule 24(b).  But

Sierra Club does not purport to assert any new claims, and it has not made (or even attempted to make) any showing that EPA does not adequately represent its interests. Sierra Club's active involvement in this case will add nothing but inefficiency, complication, and delay. Accordingly, the Court should deny Sierra Club's Motion to Intervene in its entirety, or, if granted, the Court should limit Sierra Club's participation appropriately.

## QUESTIONS PRESENTED

(1)   **WHETHER SIERRA CLUB CAN INTERVENE AS A MATTER OF RIGHT BY CITING THE WRONG CITIZEN SUIT PROVISION AND BY ASSERTING THE SAME INTERESTS AS EPA?**

(2)   **WHETHER THE COURT SHOULD ALLOW PERMISSIVE INTERVENTION IN AN ALREADY COMPLEX CASE, WHICH WOULD INEVITABLY CAUSE INEFFICIENCY AND DELAY, WHERE SIERRA CLUB CANNOT ARTICULATE ANY INTEREST THAT DIVERGES FROM EPA?**

## I.   ARGUMENT

### a.   Sierra Club Does Not Have an Unconditional Right to Intervene under Rule 24(a)(1).

In arguing that it has a right to intervene, Sierra Club cites the wrong section of the Clean Air Act ("CAA"). Sierra Club's authority cannot maintain suit does not arise from 42 U.S.C. § 7604(a)(1), as it contends. That section of the CAA applies only when a plaintiff or intervenor alleges that a defendant has violated an "emission standard or limitation." 42 U.S.C. § 7604(a)(1). Here, neither EPA nor Sierra Club has made such an allegation. Instead, Sierra Club's authority falls under 42 U.S.C. § 7604(a)(3), because EPA bases its Complaint on the allegation that Westar failed to procure a Prevention of Significant Deterioration ("PSD") permit for work performed at the Jeffrey Energy Center in the 1990s. The CAA, in 42 U.S.C. § 7604(b)(1)(B), authorizes intervention as a matter of right only for cases falling under §

7604(a)(1)—not § 7604(a)(3). Therefore, Sierra Club does not have an unconditional statutory right to intervene in this case.

Rule 24(a)(l) provides for intervention as of right when a statute of the United States confers an unconditional right to intervene. FED. R. CIV. P. 24(a)(1). As a general rule, however, federal courts applying this provision have been reluctant to find that an unconditional right to intervene exists. *See, e.g., Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1232 (3d Cir. 1994) ("[C]ourts have construed Rule 24(a)(1) narrowly; these courts have been reluctant to interpret statutes to grant an unconditional right to intervene to private parties."); *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 641 (1st Cir. 1989) ("Rule 24(a)(1) is narrowly construed; private parties are rarely given an unconditional right to intervene."); 7C Charles Allen Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1906 (3d ed. 2007) (collecting cases). This reluctance extends to cases brought under the statute at issue here—the CAA. *See, e.g., United States v. U.S. Steel Corp.*, 87 F.R.D. 709, 711 (W.D. Pa. 1980) (declining to find an "unconditional" or absolute right to intervene under the CAA).

Congress "intended citizen suits to both goad the responsible agencies to more vigorous enforcement ... and, if the agencies remained inert, to provide an alternative enforcement mechanism." *Baughman v. Bradford Coal Co.*, 592 F.2d 215, 218 (3d Cir. 1979). To that end, the CAA's citizen suit provisions provide for "private attorneys general" to supplement, but not duplicate, governmental enforcement. *Natural Res. Def. Council, Inc. v. EPA*, 484 F.2d 1331, 1337 (1st Cir. 1973); *see also Natural Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 700 (D.C. Cir. 1975) (stating that Congress enacted § 7604 as a "supplemental" enforcement tool). To allow Sierra Club to intervene in this case would contravene Congress's intent "to provide for citizens' suits in a manner that would be least likely to clog already burdened federal courts and

3

most likely to trigger governmental action which would alleviate any need for judicial relief."

*City of Highland Park v. Train*, 519 F.2d 681, 690-91 (7th Cir. 1975).

Sierra Club claims to find statutory authority for an unconditional right to intervene in 42

U.S.C. §§ 7604(a)(1) and (b)(1)(B). 42 U.S.C. § 7604(a)(1) provides as follows:

> Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf –
>
> (1) against any person…who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation.

42 U.S.C. § 7604(a)(1). 42 U.S.C. § 7604(b) provides:

> No action may be commenced—
>
> (1) under subsection (a)(1) of this section—
>
> . . .
>
> (B) if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right.

42 U.S.C. § 7604(b). When read together, §§ 7604(a)(1) and (b)(1)(B) establish that citizens

may intervene as a matter of right in CAA proceedings initiated by the government that fall only

within § 7604(a)(1). *See id.* If the government's case involves a violation other than that

addressed by § 7604(a)(1), then a citizen may not intervene as a matter of right but instead can

seek permissive intervention only. Such is the case here.

This case does not involve allegations that Westar, in performing the work at the Jeffrey

Energy Center in the 1990s, violated an emissions standard or limitation under 42 U.S.C. §

7604(a)(1). Under the CAA, an "emission standard or limitation" is defined to mean, *inter alia*,

a "standard, limitation or schedule established…under any applicable State implementation plan

…, and any requirement to obtain a permit as a condition of operations." 42 U.S.C. § 7604(f).

4

EPA's Complaint alleges that Westar "modified and thereafter operated three generating units at Jeffrey Energy Center ... without first obtaining appropriate permits authorizing this construction and without installing and employing the [best available control technology ("BACT")] to control emissions ... as required by the [CAA], applicable federal regulations, and the Kansas SIP." (Doc. No. 1: Compl. ¶ 2.) EPA's Complaint contains no allegations that Westar is violating any "standard, limitation or schedule established ... under any State implementation plan," nor any allegation that Westar has violated "any requirement to obtain a permit as a condition of operations." 42 U.S.C. § 7604(f).[1]

In this action, the permits Westar allegedly failed to procure are pre-construction permits under the PSD provisions of the CAA.[2] Before a utility "modifies" its facility in such a way that would result in a significant increase in emissions, the PSD provisions require it to obtain a pre-construction permit that specifies the control technology (BACT) to install. *See* 40 C.F.R. § 52.21(j)(3) (1981). A PSD permit authorizing the "major modification" of a major emitting facility is required not as "as a condition of operations," but is instead a requirement for construction. *Compare* 42 U.S.C. § 7475 (preconstruction permits), *with* 42 U.S.C. § 7661, *et*

---

[1] The legislative history of the CAA confirms that Congress did not intend this section to cover PSD preconstruction permits. The 1977 CAA Amendments added the PSD preconstruction permit program to the CAA. At that time, there was no federal operating permit program, nor was there a § 7604(f)(4). The 1990 Amendments to the CAA created the Title V operating permit program. *See* Pub. L. No. 101-549, §§ 501-507, 104 Stat. 2635-2648 (codified as amended at 42 U.S.C. §§ 7661-7661f). In those same 1990 amendments, Congress amended 42 U.S.C. § 7604(f) to add "(4) any other standard, limitation, or schedule established under any permit issued pursuant to title V or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations" under the definition of "emission standard or limitation." *Id.* § 707(e), 104 Stat. 2683 (codified as amended at 42 U.S.C. § 7604). This legislative history shows Congressional intent that § 7604(f)(4) cover operating permits, not construction permits under the PSD program.

[2] EPA also alleges that Westar violated Title V, the CAA's operating permit program, by failing to identify PSD as an "applicable requirement" in its Title V permit applications. The legal sufficiency of that claim is a matter for another day. For now, Westar notes that neither EPA nor Sierra Club contend that Westar has violated or is in violation of the Title V operating permit it has for Jeffrey Energy Center.

*seq.* (operation permits). The text of the PSD regulations, which specifies a source's obligations under the PSD program, makes that clear. *See* 40 C.F.R. § 52.21(i)(1) (1981) ("No stationary source or modification to which the requirements of paragraphs (j) through (r) of this section apply *shall begin actual construction* without a permit which states that the … modification would meet those requirements." (emphasis added)). And although the regulations impose liability for constructing a "major modification" without a PSD permit, they do not impose liability for operating a "major modification" without such a permit. *See id.* § 52.21(r)(1). In short, the PSD permit is required before constructing a "major modification," it is not a requirement "as a condition of operations." Consequently, the failure to obtain a preconstruction permit does not constitute a violation of an "emission standard or limitation," and § 7604(b)(1)(B) does not provide Sierra Club with a statutory right to intervene.[3]

Because EPA fails to allege a violation of an emissions standard or limitation, the case does not fall within the scope of § 7604(a)(1). Instead, the Complaint falls under § 7604(a)(3), which governs an allegation like the one asserted here—the failure to obtain a permit when required. 42 U.S.C. § 7604(a)(3) provides that an action may be brought:

> (3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I of this chapter [PSD provisions] . . . or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

---

[3] Although Sierra Club relies upon *United States v. Duke Energy Corp.*, 171 F. Supp. 2d 560 (M.D.N.C. 2001), that opinion is neither controlling nor persuasive. The *Duke Energy* Court determined that because a preconstruction permit requires a determination of BACT, and the failure to apply BACT is a ground for injunctive relief, then it follows that "the requirement of obtaining a construction permit amounts to a condition of operations." *Id.* at 563-64. That reasoning confuses the nature of the violation defined by the statute with the permissible relief the statute affords, and was criticized by the court in *New York v. Niagara Mohawk Power Corp.*, 263 F. Supp. 2d 650, 662 n.20 (W.D.N.Y. 2003), for failing to "fully appreciate the salient distinctions between preconstruction and operating permits under the Clean Air Act." *See also* Order, *United States v. Alabama Power Co.*, No. 1:99-CV-02859 (N.D. Ga. March 27, 2001) (summarily rejecting Sierra Club's 24(a)(1) argument) (pursuant to D. Kan. Rule 7.6(b), submitted as Attachment A with this Memorandum).

42 U.S.C. § 7604(a)(3).   Section § 7604(b)(1)(B) does not provide an automatic right to intervene for claims falling under § 7604(a)(3)—something Sierra Club concedes in a footnote. (*See* Doc. No. 37: Mot. to Intervene at 4 n.2.)  But rather than recognizing the implications this concession has for its Rule 24(a)(1) argument, Sierra Club asserts that the allegations in EPA's Complaint fall under both §§ 7604(a)(1) and (a)(3).  (*Id.*)  But Sierra Club's reading of these statutory provisions would render superfluous citizen suits under § 7604(a)(3) for failure to obtain PSD permits.  Naturally, the federal courts do not construe statutes in that fashion.  *See United States v. Alaska,* 521 U.S. 1, 59 (1997) ("[T]he Court will avoid an interpretation of a statute that renders some words altogether redundant" or "render[s] the broader terminology superfluous" (internal quotation marks omitted)); *United States v. Menasche,* 348 U.S. 528, 538-39 (1955) ("It is [the court's] duty to give effect, if possible, to every clause and word of a statute." (internal quotation marks omitted)); *but see United States v. Duke Energy Corp.*, 171 F. Supp. 2d 560, 564-65 (M.D.N.C. 2001).  Because Sierra Club's motion to intervene is based on the failure to obtain PSD permits as alleged by EPA, and those violations fall within 42 U.S.C. § 7604(a)(3), not 42 U.S.C. § 7604(a)(1), Sierra Club does not have an unconditional right to intervene.

### b. Sierra Club Does Not Have a Right to Intervene under Rule 24(a)(2).

Because Sierra Club's interest in this case is more than adequately represented by EPA's representation, its alternative argument for intervention as a matter of right also fails.  EPA alleges it brought this enforcement action to protect the public from purportedly harmful emissions and to provide the public an opportunity to participate in the permitting process. But this is exactly the same interest that Sierra Club professes to represent.  Sierra Club offers only unsupported allegations that EPA will not provide adequate representation due to "potentially

conflicting concerns." (Doc. No. 37: Mot. to Intervene at 8.)  Sierra Club has therefore failed to carry its burden to show that it has a right to intervene in this case, and this Court should deny Sierra Club's motion.

Rule 24(a)(2) provides:

(a) On timely motion, the court must permit anyone to intervene who:

. . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2).  Intervention under Rule 24(a)(2) requires timeliness, an interest in the action, impairment of that interest, and inadequate representation. *Coalition of Arizona/New Mexico Counties v. Dep't of Interior*, 100 F.3d 837, 840 (10th Cir. 1996).  Sierra Club's motion falls short of this standard because it has not demonstrated that EPA is an inadequate representative of its interests.

### i. EPA Adequately Represents Sierra Club's Interests.

Sierra Club's motion fails to show why EPA will not adequately represent its interests in this litigation.  Sierra Club contends that its burden of showing inadequate representation is "minimal." (Doc. No. 37, at 7.)  However, the "general presumption [is] that representation is *adequate* when the objective of the applicant for intervention is identical to that of one of the parties." *San Juan County, Utah v. United States*, 503 F.3d 1163, 1204 (10th Cir. 2007) (emphasis in original and internal quotation marks omitted).  Additionally, where the government is already a party, a greater showing of inadequacy of representation is required. *See United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 985 (2d Cir. 1984).

In *Hooker Chemicals*, four environmental organizations sought to intervene in an action originally brought by the United States.  The United States charged Hooker Chemicals with

8

releasing dangerous chemicals into the environment and thereby creating an imminent and substantial danger to the environment and the health of citizens under several environmental laws. The court denied the environmental groups' request to intervene because it found that they failed to demonstrate that their interests were inadequately represented by the United States. *Id.* at 984-85. Instead, when one of the parties is an arm or agency of the government, and the case concerns a matter of sovereign interest, the bar for intervention rises, requiring "a strong affirmative showing that the sovereign is not fairly representing the interests of the applicant." *Id.* at 985; *see also Envtl. Def. Fund, Inc. v. Higginson*, 631 F.2d 738, 740 (D.C. Cir. 1979) ("Under the *parens patriae* concept, … a state that is a party to a suit involving a matter of sovereign interest is presumed to represent the interests of all its citizens). Sierra Club has provided no evidence to show that it has an interest adverse to EPA.

### ii. Sierra Club Has Not Rebutted the Presumption of Adequate Representation by EPA.

Sierra Club has failed to rebut the presumption that EPA will adequately represent Sierra Club's interests. The burden is on the applicant in intervention to show that the representation by the existing party is inadequate. *Coalition of Arizona/New Mexico Counties*, 100 F.3d at 844. Representation by an existing party is inadequate when an applicant demonstrates: (1) collusion between the representative and an opposing party; (2) that the representative has or represents an interest adverse to the applicant; or (3) that the representative has failed in the fulfillment of its duty. *Id.* at 844-45. In this case, Sierra Club does not even allege any of these, much less make the "strong affirmative showing" required where EPA is already a party.

Sierra Club has not alleged or even suggested the possibility of collusion between Westar and EPA. Sierra Club also has failed to suggest, much less establish, how its interests and those

of EPA's are adverse. Instead, it merely proffers vague and unsupported allegations that EPA's interests may be broader than Sierra Club's interests. (Doc. No. 37: Mot. to Intervene at 7-8.)

In reality, the interests of Sierra Club and EPA are in complete alignment. Perhaps the best evidence on this point is Sierra Club's decision to adopt, in toto, EPA's Complaint, making no new allegations of its own. (*Compare* Doc. No. 37, Attach. 1: Proposed Compl. in Intervention, *with* Doc. No. 1: Compl.) Moreover, EPA's stated purpose in initiating this action is the precise interest that Sierra Club professes to have in this case. (*Compare* Doc. No. 1: Compl. ¶¶ 3, 14, 18 (protecting the public's health by ensuring that electric generating units obtain "appropriate pollution controls [to prevent] massive amounts of [pollutants]" from "being released into the atmosphere" and allowing "public participation in the decision making process"), *with* Doc. No. 37: Mot. to Intervene at 6 ("[P]rotecting its members from harmful air pollution and in preserving their right to participate in the permitting process.").) As a result, Sierra Club has no need to inject itself as a party in this proceeding.

Finally, Sierra Club has not alleged that EPA has failed or is likely to fail in the fulfillment of its duty. Rather, it relies on nebulous statements, claiming the possibility of "potentially conflicting concerns." (Doc. No. 37: Mot. to Intervene at 8.) The mere possibility of some future conflict—without any further support—does not demonstrate that EPA has failed or is likely to fail in representing Sierra Club's interests. *See Solid Waste Agency of N. Cook County v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 508 (7th Cir. 1996) (the fact that the DOJ has additional interests, as representative of the entire federal government, is not sufficient to establish inadequacy of representation of the applicant's interest).

Sierra Club has failed to meet its burden under Rule 24(a)(2). Instead, it has made only unsupported and generalized allegations that EPA will not adequately represent its interests. On

this record, the Court should deny Sierra Club's motion for intervention as of right under Rule 24(a)(2).

### c. The Court Should Deny Sierra Club's Request for Permissive Intervention under Rule 24(b).

Sierra Club offers a single, conclusory paragraph in support for its third alternative: seeking permissive intervention under Rule 24(b). In doing so, it fails to provide any reason for this Court to make an already complex case more complex. Because Sierra Club has not articulated any interest that diverges from EPA's, this Court should deny Sierra Club's tertiary request for permissive intervention.

Rule 24(b) affords courts discretion to permit intervention when an applicant's claim or defense and the main action have a common question of fact or law. FED. R. CIV. P. 24(b)(3). When deciding whether to grant permissive intervention, the court must consider whether the intervention "will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* The case before the Court is already complex. The intervention of an additional party—who asserts no new claims and whose interests completely align with EPA—will inevitably cause delays, burdens, and expense to all parties involved in comparison to the minimal benefits such intervention might provide for resolution of the case. Moreover, there is little, if any, risk that denial of intervention would prejudice Sierra Club because its interests and those of EPA are the same. In short, permissive intervention would neither promote judicial economy nor provide helpful additional guidance for the Court in resolving the issues in this case. Accordingly, the Court should deny Sierra Club's request for permissive intervention.

## II.   IF THE COURT ALLOWS INTERVENTION, IT SHOULD ALSO LIMIT SIERRA CLUB'S PARTICIPATION.

Should the Court allow Sierra Club to intervene, it should place reasonable restrictions on Sierra Club's participation in order to avoid duplicative and unnecessary discovery and filings

that would burden the existing parties and the Court.   Where, in the exercise of discretion, permissive intervention is allowed, courts have the right and authority to restrict the role of the intervenor. *Stringfellow v. Concerned Neighbors In Action,* 480 U.S. 370, 380 (1987).   The same holds true   even when the applicant has a right to intervene. *See   id.* at 383 (Brennan, J., concurring) ("restrictions on participation may also be placed on an intervenor of right." (citing Notes of Advisory Committee on Rules, 19G Amendment, Rule 24 of the Federal Rules of Civil Procedure, which state that "[a]n intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.")); *see also Duke Energy,* 171 F. Supp. 2d at 565 ("Applicants have an unconditional right to intervene, but this does not prevent the imposition of reasonable limitations on Applicants' participation to ensure the efficient adjudication of the litigation.").

The United States Supreme Court has recognized that restrictions *are* appropriate in environmental cases like this one where the government is prosecuting the action.   In *Stringfellow,* the Supreme Court declined to rule on an interlocutory appeal seeking to set aside a district court's imposition of restrictions on the permissive intervention of a citizens group ("CNA") in an action brought against parties allegedly responsible for release of hazardous wastes. *Id.* at 379.   The district court permitted CNA to intervene, subject to three conditions: 1) CNA could not assert a claim for relief already requested by an original party; 2) CNA could not intervene in the government plaintiffs' recovery of clean-up costs; 3) CNA could not file motions or conduct its own discovery without conferring with all original parties and obtaining permission from one of these parties. *Id.* at 373.   Recognizing that unlimited and unconditioned

12

intervention could disrupt the efficient administration of justice, the Supreme Court declined to overturn the restrictions. *Id.* at 380.

Because Sierra Club seeks to assert only those claims alleged by EPA and its interests are identical to those of EPA, no legitimate purpose would be served by allowing Sierra Club to participate actively in this case. Accordingly, should the Court allow Sierra Club to intervene, Westar respectfully requests that any such intervention be subject to the following conditions:

- Sierra Club should be required to abide by any case management order entered in this case;

- Sierra Club should be allowed access to discovery initiated by the original parties (subject to any protective order which may be entered), but should be barred from initiating or conducting discovery independent from EPA;

- Sierra Club should be allowed to attend all depositions taken in the case, but only one party (either EPA or Sierra Club) should be allowed to question or interrogate witnesses;

- Sierra Club should be restricted from filing any duplicative pleadings or motions in the case; and

- Sierra Club should be required to confer with EPA before filing any pleadings or motions in the case to confirm they are not duplicative.

## III. CONCLUSION

For the reasons set forth in this memorandum, Sierra Club's Motion to Intervene should be denied, or, if granted, should be subject to the conditions described above.

Respectfully submitted,

s/ Daniel D. Crabtree
Daniel D. Crabtree, KS Bar #10903
**STINSON MORRISON HECKER LLP**
10975 Benson, Suite 550
12 Corporate Woods
Overland Park, Kansas  66210
Telephone (913) 451-8600
Facsimile (913) 451-6352
Email:  dcrabtree@stinson.com

Nash E. Long, III*
**WINSTON & STRAWN LLP**
214 N. Tryon Street ~ 22 Fl.
Charlotte, North Carolina  28202-1078
704-350-7733 ~ Direct
704-350-7800 ~ Fax
Email:  nlong@winston.com

John M. Holloway, III*
**WINSTON & STRAWN LLP**
1700 K Street, N.W.
Washington, D.C.  20006-3817
202- 282-5807 ~ Direct
202-282-5100 ~ Fax
Email:  jholloway@winston.com

*Admitted *pro hac vice*

***Attorneys for Defendant Westar Energy, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on this date, October 14, 2009, the foregoing was electronically filed

with the clerk of court by using the CM/ECF system which will send a notice of electronic filing

to the following:

John C. Cruden
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C.  20530-0001
Email:  John.Cruden@usdoj.gov

Mark C. Elmer
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, Colorado  80294
Email:  Mark.Elmer@usdoj.gov

David Zimmerman
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas  66101
Email:  David.Zimmerman@usdoj.gov

Dana M. Skelley
U.S. Environmental Protection Agency
Associate Regional Counsel
901 N. Fifth Street
Kansas City, Kansas  66101
Email:  skelley.dana@epa.gov

Jeffrey A. Kodish
U. S. Environmental Protection Agency
1595 Wynkoop Street (8MSU)
Denver, Colorado  80202
Email:  kodish.jeff@epa.gov

Joanne Spalding
Sanjay Narayan
Sierra Club
85 Second Street, Second Floor
San Francisco, CA  94105-3456

Robert V. Eye
Kauffman & Eye
112 S.W. 6th Avenue, Suite 202
Topeka, KS  66603-3850

s/ Daniel D. Crabtree
Daniel D. Crabtree