# ATTACHMENT A

By Court...ty

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ALABAMA POWER CO., GEORGIA
POWER CO., and SOUTHERN
COMPANY SERVICES, INC.,

        Defendants.

CIVIL ACTION NO.

1:99-CV-02859-JEC

## ORDER

This case is presently before the Court on plaintiff's Motion for Leave to File Amended Complaint [35] and Physicians for Social Responsibility, Campaign for a Prosperous Georgia, U.S. Public Interest Research Group, and Alabama Environmental Council's Motion to Intervene as Plaintiffs [38]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's Motion for Leave to File Amended Complaint [35] should be **GRANTED IN PART AND DENIED IN PART**, and Physicians for Social Responsibility, Campaign for a Prosperous Georgia, U.S. Public Interest Research Group, and Alabama Environmental Council's Motion to Intervene as Plaintiffs [38] should be **GRANTED WITH CONDITIONS**.

AO 72A
(Rev.8/82)

BACKGROUND

The facts and an explanation of the underlying law in this case are set out in the Court's Order [57] dated August 1, 2000, and are only briefly repeated herein.   On November 3, 1999, plaintiff filed a complaint asserting claims against defendants Alabama Power, Georgia Power, and Southern Company Services (hereinafter "SCS") under sections 113(b)(2) and 167 of the Clean Air Act (hereinafter "the Act"), 42 U.S.C. §§ 7413(b)(2) and 7477; the Prevention of Significant Deterioration (hereinafter "PSD") provisions of the Act, 42 U.S.C. §§ 7470-92; and the New Source Performance Standards (hereinafter "NSPS") provisions of the Act, 42 U.S.C. § 7411.  (Compl. [1].)  Defendant Georgia Power filed an answer on December 28, 1999.  (Answer [4].)  The next day, SCS filed a Rule 12(b)(6) motion to dismiss, asserting that plaintiff's complaint failed to state a claim against SCS upon which relief could be granted.  (Mot. to Dismiss [5].)  That same day, defendant Alabama Power filed two motions--the first a motion to dismiss based on lack of personal jurisdiction and improper venue, and the second an alternative motion to transfer venue to the Northern District of Alabama.  (Mot. to Dismiss [7]; Mot. to Transfer Venue [8].)   On January 15, the Consumers' Utility Counsel Division of the Governor's Office of Consumer Affairs (hereinafter "CUC") filed a motion for leave to file an amicus brief on behalf of electrical utility consumers potentially

2

affected by the suit. (Mot. for Leave to File Brief as Amicus Curiae [15].) On March 31, plaintiff filed a motion for leave to file an amended complaint, the purpose of which is to add further counts against the original defendants and add similar claims against three new defendants--Gulf Power, Mississippi Power, and Savannah Power and Electric. (Mot. for Leave to File Am. Compl. [35].) Two weeks later, several public interest groups filed a motion to intervene as plaintiffs. (Physicians for Social Responsibility, Campaign for a Prosperous Georgia, U.S. Public Interest Research Group, and Alabama Environmental Council's Mot. to Intervene as Plaintiffs (hereinafter "Mot. to Intervene as Pls.") [38].)

On August 1, 2000, this Court issued an Order in which it granted defendants Alabama Power's and SCS's motions to dismiss. (Order [57].) In addition, the Order denied CUC's motion to file an amicus brief. (*Id.*) The Court deferred ruling on plaintiff's motion for leave to file an amended complaint and the public interest groups' motion to intervene as plaintiffs at that time. The Court addresses those motions today.

The following groups have filed a motion to intervene as plaintiffs: Physicians for Social Responsibility, Campaign for a Prosperous Georgia, United States Public Interest Group, and Alabama Environmental Council. (Mot. to Intervene as Pls. [38].) These organizations state that they have "thousands of members in

3

Alabama and Georgia that are exposed to the pollutants and their byproducts that Defendants are alleged to be emitting into the air in violation of the Clean Air Act." (*Id.* at 8.) They state that they have an unconditional statutory right to intervene because they have a direct, substantial, and legally protectible interest in the subject matter of the action. In the alternative, the applicants move for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). (*Id.* at 6-15.)

In plaintiff's proposed amended complaint, it seeks to add three new defendants: Savannah Power and Electric Company, Gulf Power Company, and Mississippi Power Company. Just as Georgia Power and Alabama Power, these three companies are wholly-owned subsidiaries of the Southern Company. (Mem. in Supp. of the U.S.'s Mot. for Leave to Amend its Compl. [35] at 1 n.1.) Gulf Power is a Maine corporation with its principal place of business in Pensacola, Florida. (Am. Compl. [35] at ¶ 16.) Plaintiff states that Gulf Power is admitted to do business in Alabama, Florida, Georgia, and Mississippi and that it owns and operates electric generating facilities in Florida, Mississippi, and Georgia. (*Id.*) Mississippi Power is a Mississippi corporation with its principal place of business in Gulfport, Mississippi. (*Id.* at ¶ 17.) Plaintiff states that Mississippi Power owns and operates electric generating facilities in Mississippi and Alabama. Savannah Power is a Georgia corporation. All of the

4

proposed defendants participate in the shared system coordinated by SCS.

Plaintiff's proposed amended complaint brings additional counts against the original defendants and similar counts against three new defendants. First, plaintiff alleges that defendants Georgia Power and SCS began construction of Plant Scherer in violation of the NSPS. (The amended complaint does not bring a NSPS claim in regard to Plant Miller.) The amended complaint also states that Alabama Power and SCS modified Plants Gaston and Greene County, and conducted further modifications at Plant Barry in violation of the PSD provisions of the Act. Plaintiff further adds PSD claims against the new defendants similar to those against the original defendants. Finally, the amended complaint alleges that all of the defendants violated the applicable Clean Air Act State Implementation Plans (hereinafter "SIPS")[1] in place at the time of the modifications. (Mem. in Supp. of the Mot. of U.S. for Leave to File an Am. Compl. {35] at 2-3.)

---

[1] Under the Act, each state is required to adopt a SIP that contains emission limitations and other measures to prevent significant deterioration in attainment areas. 42 U.S.C. § 7410. A state may either have its own PSD regulations, which must be at least as strict as those under 40 C.F.R. § 51.66, approved by the EPA and incorporated into its SIP, or it may incorporate the federal regulations by reference. Each SIP must, among other measures, include a program to regulate the modification and construction of any stationary source of air pollution. 42 U.S.C. § 7410(a)(2)(C).

5

DISCUSSION

## I.   Motion to Amend

As discussed above, plaintiff has moved to amend its complaint to bring several additional claims. First, plaintiff seeks to add two new claims relating to power plants already at issue: (1) defendants Georgia Power and SCS began construction of Plants Scherer, in violation of the NSPS, and (2) defendants Alabama Power and SCS began construction of Plant Miller, in violation of the NSPS. The amended complaint also states that Alabama Power and SCS modified Plants Gaston and Greene County, and conducted further modifications at Plant Barry in violation of the Act. Plaintiff also adds claims against three new defendants--Savannah Power and Electric Company, Gulf Power Company, and Mississippi Power Company. Finally, the amended complaint alleges that all of the defendants violated the Act and the applicable SIPS in place at the time of the modifications. (Mem. in Supp. of the Mot. of U.S. for Leave to File an Am. Compl. [35] at 2-3.) All of the original defendants have filed briefs in opposition to amendment. (SCS's Opp'n to Pl.'s Mot. to Amend Compl. [40]; Def. Georgia Power Co.'s Br. in Opp'n to Pl.'s Mot. to Amend Compl. [41]; Alabama Power Co.'s Opp'n to the Gov't's Mot. to Amend Compl. [42].)

At this stage in the litigation, Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend its pleading "only by leave of court or by written consent of the adverse

6

party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). As defendants' responses to plaintiff's motion for leave to amend clearly indicate, defendants' consent is not forthcoming. Whether leave to amend should be granted, therefore, is a decision within the sound discretion of the district court. *See Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993); *see also Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330 (1971). The decision is not automatic, however. *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979).

The Supreme Court has defined several factors that a district court may consider when reviewing a motion for leave to amend under Rule 15(a), including undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the non-moving party, or futility of the amendment. *Rosen v. TRW, Inc.*, 979 F.2d 191, 194 (11th Cir. 1992) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Additionally, courts may consider the amount of time and opportunities the movant had to seek leave to amend, whether the proposed amendment is such that could have been added shortly after the complaint was filed, whether allowance of the proposed amendment would complicate trial preparation by requiring additional discovery, and whether the movant has attempted to justify any delay. *See O'Brien v. Union Oil Co. of Cal.*, 699 F. Supp. 1562, 1571 (N.D. Ga. 1988) (Forrester, J.)

7

(citing *National Serv. Indus., Inc. v. Vafla Corp.*, 694 F.2d 246 (11th Cir. 1982); *Addington v. Farmers' Elevator Mut. Ins. Co.*, 650 F.2d 663 (5th Cir. 1981); *Staggs v. Chrysler Corp.*, 678 F. Supp. 270 (N.D. Ga. 1988); *Ferrell v. Busbee*, 91 F.R.D. 225 (N.D. Ga. 1981)). In the present case, there is no evidence of undue delay, bad faith, or dilatory motive. Rather, defendant Georgia Power[2] argues that it would be prejudiced and that amendment would be futile as to the claims against Alabama Power, SCS, Gulf Power, and Mississippi Power, as they would likely be dismissed later on jurisdictional grounds.

A.   *New Claims Against Alabama Power and SCS*

The Court's August 1 Order granted both SCS's and Alabama Power's motions to dismiss. In that Order, the Court concluded that SCS is not an owner or operator of any of the operating affiliates' power plants, and accordingly, dismissed all claims asserted against SCS. The new claims asserted against SCS in the amended complaint rely on the same theories of owner/operator as those in the original complaint. With relation to Georgia or Alabama Power plants, it is clear that any claims asserting liability against SCS fail as a matter of law. As SCS played a similar role in its interaction with all of the operating affiliates under the ICC, it is also clear that the claims

---

[2] Although original defendants Alabama Power and SCS opposed the motion to amend as well, they have since been dismissed from the case.

8

involving the new defendants fail as well.  It would therefore be futile to allow plaintiff to amend its complaint to add further claims against SCS.

As to Alabama Power, the Court granted its motion to dismiss on the ground that personal jurisdiction was lacking.  Any claims asserted against Alabama Power fail as a matter of law, and plaintiff's attempt to amend its complaint to add further claims against Alabama Power would be futile.  Accordingly, to the extent that the amended complaint seeks to add new claims against these two defendants, amendment would be futile and the motion to amend to add these claims is **DENIED**.

B.   *New Claims Against Georgia Power*

Plaintiff's amended complaint also seeks to add an additional claim against defendants Georgia Power, alleging that Georgia Power violated the Georgia SIP.  (Am. Compl. [35] at ¶¶ 165-69.) Although Georgia Power filed a response opposing plaintiff's motion to amend, it did not address this issue, and the Court concludes that Georgia Power does not object to this aspect of the amendment.  (Def. Georgia Power Co.'s Br. in Opp'n to Pl.'s Mot. to Amend Compl. [41].)  The Court sees no reason why amendment to add this claim should not be allowed, as it would not prejudice Georgia Power.   Accordingly, plaintiff's motion to amend is **GRANTED** as to the Georgia SIP claim against Georgia Power.

9

C.   *Claims Against New Plaintiffs*

Plaintiff's amended complaint also includes claims against three new defendants, Gulf Power, Mississippi Power, and Savannah Power and Electric.   These three defendants operate, among other plants, Plant Crist, Plant Jack Watson, and Plant Kraft, respectively.   (Am. Compl. [35] at ¶¶ 33-35.)   Plaintiff alleges violation of the PSD provisions and applicable SIPs occurred at each of these plants.   (*Id.* at ¶¶ 194-223.)   The Court addresses the claims against Savannah Power and Electric first and then those against the other two new defendants.

1.   Savannah Power and Electric

Plaintiff alleges that Savannah Power and Electric is a Georgia corporation doing business in Alabama, Florida, Georgia, and Mississippi.   (Am. Compl. [35] at 7.)   The claims against Savannah Power and Electric involve Plant Kraft, a coal fired electric generation plant owned and operated by Savannah Power and Electric in Chatham County, Georgia.   As defendants have not objected to the joinder of Savannah Power and Electric, the Court **GRANTS** plaintiff's motion to amend as to the claims against this party.

2.   Gulf Power and Mississippi Power

In the amended complaint, plaintiff alleges that Gulf Power is a Maine corporation with its principal place of business in Pensacola, Florida.   (Am. Compl. [35] at ¶ 16.)   In addition,

10

plaintiff states that Gulf Power is admitted to do business in the states of Alabama, Florida, Georgia, and Mississippi. (*Id.*) Plaintiff states that Gulf Power owns and operates electric generating facilities within the states of Florida, Mississippi, and Georgia and provides electric capacity and energy to the shared system operated by SCS. (*Id.*)

Plaintiff's claims are based on activities occurring at Plant Crist, a coal fired electric generation plant owned and operated by Gulf Power in Escambia County, Florida. (*Id.* at ¶ 33.) In its Seventeenth Claim for Relief, plaintiff alleges that Plant Crist generates electricity from four steam generating boilers which are designated as Plant Crist Units 4 through 7. Plaintiff's amended complaint alleges that Gulf Power violated the PSD provisions of the Act by commencing construction of major modifications, as defined by the Act and the Florida SIP, at Plant Crist. (*Id.* at ¶ 195.) Plaintiff alleges that these modifications included the installation of a new economizer in Unit 7 in 1996, as well as other "major modifications." (*Id.*)

Plaintiff asserts that Gulf Power "did not obtain a PSD permit as required by FAC § 17-212.400(5) (FAC § 62-212.400(5))[3] prior to construction or operation of any of the modifications"

---

[3] The Florida Administrative Code was renumbered, and plaintiff has therefore provided citation to the code in effect at the time of the alleged violations, followed by the current numbering.

11

undertaken at Plant Crist.   (*Id.* at ¶ 196.)   Specifically, plaintiff states that Gulf Power did not install or operate "Best Available Control Technology" (hereinafter "BACT") for control of $NO_x$, $SO_2$, and PM, as applicable, as required by FAC § 17-212.400(5) (FAC § 62-212.400(5)), at Plant Crist.   Plaintiff further alleges that Gulf Power "did not comply with all provisions of the Florida SIP, including FAC § 17-212.400(5)(b-f) (FAC § 62-212.400(5)(b-f)) prior to constructing and operating the modifications at Plant Crist."   (*Id.*)   Plaintiff argues that unless restrained by the Court, Gulf Power will continue to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the Florida SIP.   (*Id.* at ¶ 197.) Plaintiff seeks injunctive relief and civil penalties in regard to the alleged violations at Plant Crist.   (*Id.* at ¶ 198.)

In plaintiff's Eighteenth Claim for Relief, plaintiff claims that Gulf Power has further violated the Florida SIP because Plant Crist is an "emissions unit," as defined by FAC § 17-210.300 (FAC § 62-212.300).   (*Id.* at ¶ 200.)   Plaintiff alleges that as an emission unit, Gulf Power was required to obtain a permit pursuant to FAC § 17-210.300(1)(a) (FAC § 62-210.300(1)(a)) prior to construction or operation of any of the modifications undertaken at Plant Crist.   (*Id.* at 201.)   Again, plaintiff argues that unless enjoined by the Court, Gulf Power will continue to violate the Act and the Florida SIP.   (*Id.* at 202.)   Plaintiff seeks an

12

injunction and civil damages as to this claim as well.  (*Id.* at 203.)

The allegations against Mississippi Power, which are quite similar, are contained in plaintiff's Nineteenth and Twentieth Claims for relief.  (Am. Compl. [35] at ¶¶ 204-13.)  Plaintiff claims that Mississippi Power made major modifications at Plant Watson, including the installation of a economizer in Unit 5 in 1992, and that it did so without first obtaining a permit as required by 40 C.F.R. §§ 52.21(a)(1) and 52.21(r)(1).  (*Id.* at ¶¶ 205-06.)  Plaintiff further alleges that Mississippi Power has not installed and operated BACT for control of $NO_x$, $SO_2$, and PM, as applicable, in violation of the Mississippi SIP, Rule APC-S-5, 40 C.F.R. § 52.21(j).  (*Id.* at ¶ 206).  Lastly, plaintiff alleges that Mississippi Power has also failed to comply at Plant Watson with the requirements of 40 C.F.R. § 52.21(k), (m), (n), and (o), as incorporated into the Mississippi SIP, Rule APC-S-5.  (*Id.*)

Defendant Georgia Power opposes plaintiff's motion to amend as far as it allows claims against Gulf Power and Mississippi Power.  (Def. Georgia Power Co.'s Br. in Opp'n to Pl.'s Mot. to Amend Compl. [41].)  Georgia Power points out that, like Alabama Power, which was dismissed after Georgia Power filed its response brief, "both Mississippi Power and Gulf Power are corporations incorporated and headquartered outside the state of Georgia."  (*Id.* at 2.)  In addition, "like Alabama Power, the allegations

13

against Gulf Power and Mississippi Power concern alleged modifications at coal-fired electric plants located outside Georgia, in Florida and Mississippi, respectively." (*Id.*) Georgia Power further claims that none of the allegations against these two parties involve any activities occurring within Georgia. (*Id.* at 2-3.)

Georgia Power contends that joinder of these two parties is improper and would significantly prejudice Georgia Power by confusing the issues. (*Id.* at 3.) It further argues that the motion to amend should be denied because it would be futile, as this Court lacks jurisdiction over either Gulf Power or Mississippi Power for the claims alleged. (*Id.* at 3-4.) The Court addresses each of these issues in turn.

        a.   Improper Joinder

Permissive joinder is governed by Rule 20(a) of the Federal Rules of Civil Procedure, which states:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons (and any vessel, cargo or other property subject to admiralty process in rem) may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or

14

> more of the plaintiffs according to their respective
> rights to relief, and against one or more defendants
> according to their respective liabilities.

Fed. R. Civ. P. 20(a). "A party seeking joinder of claimants under Rule 20 must establish two prerequisites: 1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and 2) some question of law or fact common to all persons seeking to be joined." *Alexander v. Fulton County, Georgia*, 207 F.3d 1303 (11th Cir. 2000). In *Alexander*, a panel of the Eleventh Circuit discussed the purpose and scope of Rule 20(a):

> Plainly, the central purpose of Rule 20 is to promote
> trial convenience and expedite the resolution of
> disputes, thereby eliminating unnecessary lawsuits. *See
> Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th
> Cir. 1974). The Federal Rules, however, also recognize
> countervailing considerations to judicial economy. Rule
> 42(b), for example, provides for separate trials where
> the efficiency of a consolidated trial is outweighed by
> its potential prejudice to the litigants. *See* Fed. R.
> Civ. P. 42(b); *Grayson*, 79 F.3d at 1097. The Supreme
> Court has instructed the lower courts to employ a
> liberal approach to permissive joinder of claims and
> parties in the interest of judicial economy: "Under the
> Rules, the impulse is towards entertaining the broadest
> possible scope of action consistent with fairness to the
> parties; joinder of claims, parties and remedies is
> strongly encouraged." *United Mine Workers v. Gibbs*, 383
> U.S. 715, 724, 86 S. Ct. 1130, 1137, 16 L. Ed.2d 218
> (1966).

*Alexander*, 207 F.3d at 1323.

The *Alexander* court also discussed how lower courts should analyze Rule 20's requirements of the same transaction or occurrence, or series of transactions or occurrences, and common

15

questions of law or fact common to all persons seeking to be joined.   As to the "same transaction requirement," the court explained:

> In determining what constitutes a transaction or occurrence for the purposes of Rule 20(a), courts have looked for meaning to Fed. R. Civ. P. 13(a) governing compulsory counterclaims. *See Mosley*, 497 F.2d at 1333. For the purposes of Rule 13(a), "'[t]ransaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S. Ct. 367, 371, 70 L. Ed. 750 (1926) (interpreting the compulsory counterclaim provision of former Equity Rule 30). Accordingly, "all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Mosley*, 497 F.2d at 1333.

*Alexander*, 207 F.3d at 1323.  Addressing the common questions of law or fact prong, the court explained that "[t]he second prong of Rule 20 does not require that all questions of law and fact raised by the dispute be common, but only that some question of law or fact be common to all parties." *Alexander*, 207 F.3d at 1324 (citing *Mosley*, 497 F.2d at 1334.)   Georgia Power contends that plaintiff's attempt at joinder fails to meet either requirement.

As to the first prong, Georgia Power points out that the claims against Georgia Power involve the installation of an economizer at Plant Bowen in Bartow County, Georgia, in 1992, and construction at Plant Scherer in Bartow and Monroe County, Georgia, in 1977 and 1978. (Def. Georgia Power Co.'s Br. in Opp'n to Pl.'s Mot. to Amend Compl. [41] at 6.)   The proposed claims

16

against Gulf Power involve repairs to equipment at Plant Crist in Escambia County, Florida, in 1996, and the proposed allegations against Mississippi Power concern repairs to equipment at Plant Watson in Harrison County, Mississippi, in 1992. (*Id.*) Georgia Power argues that "[t]he subject repairs in the proposed amendment involve distinct decision making, distinct power production units and equipment, not to mention distinct post-repair results--all of which occurred outside of Georgia." (*Id.* at 7.) Further, Georgia Power points out that the Government admitted that "'the specific facts about the work done at each plant . . . varies (sic) from plant to plant.'" (*Id.* (citing Mem. in Supp. of the Mot. of the U.S. for Leave to File an Am. Compl. [35] at 15).)

Plaintiff counters this argument by stating that although the modifications and construction at the power plants occurred at different times in different locations, and were conducted by different corporations, they constitute a series of common transactions or occurrences because the five Southern Company affiliates "act together as an integrated unit," and "the operations and management of the original and proposed defendants are inextricably bound." (U.S.'s Reply Mem. in Supp. of its Mot. for Leave to Amend its Compl. [46] at 7.) Plaintiff contends that because the affiliates pool their resources, "[d]ecisions regarding increases and decreases in any one affiliate's generating capacity thus must be made on a coordinated basis as

17

they affect the reliability of the other affiliates' systems and their attendant needs regarding new generating capacity." (*Id.* at 8.) In sum, plaintiff argues that all of the claims arise from a common, coordinated series of decisions to extend the lives of the coal-fired electric generating facilities across the Southern Company electric system. (*Id.* at 6.)

As to the second prong, Georgia Power claims that the allegations do not present common questions of law or fact. (Def. Georgia Power Co.'s Br. in Opp'n to Pl.'s Mot. to Amend Compl. [41] at 9.). Defendant states that while the underlying claims all involve "the meaning and practical application of the terms 'major modification' and 'routine maintenance, repair and replacement,'" these are determinations that the Government has admitted must be made on a case-by-case basis. (*Id.*) In addition, Georgia Power argues that SIPS are, by definition, state laws and regulations. Plaintiff, however, claims that the facts are not unique, as each of the defendants replaced the same piece of equipment--an economizer--at the plants in question. (U.S.'s Reply Mem. in Supp. of its Mot. for Leave to Amend its Compl. [46] at 12.) Further, plaintiff maintains that SIPS are federal laws, as least for the purposes of this case, and that the SIPS of Georgia, Mississippi, Alabama, and Florida are substantively the same. (*Id.* at 16-19.)

18

In support of its argument against joinder, Georgia Power cites *Grayson v. K-Mart Corp.*, 849 F. Supp. 785 (N.D. Ga. 1994) (Carnes, J.), in which the undersigned severed the claims of several plaintiffs alleging employment discrimination.[4]   In *Grayson*, eleven plaintiffs brought age discrimination suits against their employer, K-Mart, and K-Mart brought a motion to sever the claims and have separate trials. The plaintiffs worked in different K-Mart stores throughout Alabama, Florida, Georgia, and North Carolina. *Id.* at 786. Plaintiffs argued that K-Mart had a company-wide policy to demote managers over forty years of age and that joinder of their claims and a single trial were appropriate because of a common series of transactions and common questions of law and fact. K-Mart, however, countered that the employees' demotions were distinct, unrelated employment decisions.   While all of the employment decisions had to be approved by a regional officer, the undersigned concluded that the evidence established that the initial decision to demote an employee began at the local level and that the plaintiffs' cases did not constitute one logical transaction or occurrence for purposes of Rule 20(a).   *Id.* at 789.   The undersigned also concluded that, although all of the plaintiffs' claims arose under

---

[4] Defendant also cites *Smith v. North American Rockwell Corp.*, 50 F.R.D. 515, 524 (N.D. Okla. 1970), which likewise involved discrimination claims by several different plaintiffs.

19

the ADEA, no common question of law or fact existed between the plaintiffs' cases, within the meaning of Rule 20. *Id.* at 789. ("As detailed previously, each demotion decision affecting the plaintiffs in these cases was a discrete act by the defendant. 'As indicated, the factual and legal questions between the plaintiffs and the defendant are based upon the wholly separate acts of the defendant with respect to each plaintiff. There is consequently a complete lack of common questions of fact or law, the second element required by Rule 20(a), and the action[s] must be severed on this ground as well.' *Id.*") (citation omitted).

Plaintiff argues that *Grayson* is distinguishable for two reasons. (U.S.'s Reply Mem. in Supp. of its Mot. for Leave to Am. its Compl. [46] at 10.) First, plaintiff points out that allowing joinder in *Grayson*, "based solely on allegations of company-wide bias would [have] eliminate[d] virtually all limits on joinder." (*Id.*) *See Grayson*, 849 F. Supp. at 789 ("Taking plaintiffs' reasoning to its logical end, every employment decision made by managers subject to central policies and review would constitute one transaction or occurrence, and any group of aggrieved employees would be entitled to join its claims under Rule 20(a).") Second, plaintiff points out that the Court noted that if it had allowed joinder in *Grayson*, it would have had to conduct essentially eleven "mini-trials." *See id.* at 791. Plaintiff contends that these concerns are not present in the case at bar.

20

Plaintiff is correct that *Grayson* is factually distinguishable. However, the underlying principles and concerns are the same. While the operating affiliates may act in a coordinated manner, the determination of whether construction or modification of equipment at a particular plant was in violation of the Act or relevant SIP is a fact-specific determination that must be made on a case-by-case basis. As this Court stated in *Grayson*, "It is, of course, true that plaintiffs have alleged against defendant[s] claims based on the same general theories of law, but this is not sufficient." *Grayson*, 848 F. Supp. at 789. The Court agrees with Georgia Power that "whether Georgia Power violated the Act by making certain repairs at a Georgia power plant in 1992 is not common with the question of whether another company, Gulf Power, violated the Act by repairing a power plant in Florida in 1996." (Def. Georgia Power Co.'s Br. in Opp'n to Pl.'s Mot. to Am. Compl. [41] at 12.)

Georgia Power also argues that granting plaintiff's motion to amend would result in undue prejudice to it, as there would be a risk of "unnecessary confusion and complication of already complicated facts and issues." (*Id.* at 19.) It claims that the "additional expense and potential for confusion is substantial" and that "[b]y comparison, any potential prejudice to the Government would be slight." (*Id.* at 20.) Plaintiff, on the other hand, argues that any prejudice to defendants will not be

21

"undue" because the similarity of the claims is so great. In addition, plaintiff contends that it will be substantially prejudiced if it must try the claims against each defendant in separate cases. (U.S.'s Reply Mem. in Supp. of its Mot. for Leave to Amend its Compl. [46] at 13.) The Government contends this is so because many of the same individuals will need to be deposed, and the testimony of many of the witnesses--including utility boiler experts, engineers and environmental compliance staff from SCS, industry witnesses, and EPA engineers--will have to be duplicated if there are separate trials. *Id.* It also argues that it could be subject to inconsistent verdicts if forced to try the cases in four separate states. (*Id.* at 22-23.)

### b.   Futility

Georgia Power's second argument in opposition to the motion to amend is that amendment should be denied due to futility because this Court lacks jurisdiction over the proposed defendants and venue would be improper. (Def. Georgia Power Co.'s Br. in Opp'n to Pl.'s Mot. to Amend Compl. [41] at 13.) Although the Court had not ruled on defendants Alabama Power and SCS's motions to dismiss at the time Georgia Power filed its brief in opposition to the motion to amend, Georgia Power argued that it was likely that the Court would grant the motions to dismiss, and if it did, it should also deny the motion for leave to amend as to defendants Gulf and Mississippi Power because the Court lacked jurisdiction

22

over them as well.   The Court has since ruled on the motions to dismiss and concluded that Alabama Power and SCS should be dismissed from the case as they lacked sufficient contacts for the Court to exercise jurisdiction over them.   The question before the Court now is whether Gulf Power and Mississippi Power are similarly situated.

Georgia Power contends that "[a] review of the pleadings shows that the Government will not be able to sustain its burden of establishing that jurisdiction over Gulf Power and Mississippi Power is proper . . . and that the proposed amended complaint is futile because of this jurisdictional defect."   (Def. Georgia Power Co.'s Br. in Opp'n to Pl.'s Mot. to Am. Compl. [41] at 13.) In support of this argument, Georgia Power relies on Alabama Power's motion to dismiss and the cases cited therein.   (*Id.*)   It points out that, similar to Alabama Power, both Gulf Power and Mississippi Power are incorporated in other states, have their principal places of business in other states, have their customer bases in other states, and conducted the relevant repairs at plants located in other states.   Georgia Power contends that plaintiff's "allegations fail to establish that the prospective defendants had sufficient contacts with this forum."   (*Id.* at 15.)

Plaintiff argues that it is premature for the Court to consider these jurisdictional questions.   (U.S.'s Reply Mem. in Supp. of its Mot. for Leave to Amend its Compl. [46] at 23.)

23

Plaintiff maintains that "[q]uestions of personal jurisdiction over a corporation cannot be decided without an analysis of that corporation's contacts with the forum state." (*Id.* at 24.) The Government, however, contends that the same documents submitted in opposition to Alabama Power's motion to dismiss support a finding of jurisdiction over Gulf and Mississippi Power.[5] (*Id.*) Just as it did with the earlier motions to dismiss, the Government requests an opportunity to conduct discovery before the Court rules on whether there are sufficient contacts to exercise jurisdiction over these defendants.

Georgia Power also argues that venue in the Northern District of Georgia is inappropriate as to Gulf and Mississippi Power. (*Id.*) The venue provision of the Clean Air Act reads:

> Any action under this subsection may be brought in the district court of the United States for the district in which the violation is alleged to have occurred, or is occurring, or in which the defendant resides, or where the defendant's principal place of business is located, and such court shall have jurisdiction to restrain such violation, to require compliance, to assess such civil penalty, to collect any fees owed the United States under this chapter (other than subchapter II of this chapter) and any noncompliance assessment and nonpayment penalty owed under section 7420 of this title, and to award any other appropriate relief.

42 U.S.C. § 7413(b). Georgia Power states that plaintiff has failed to demonstrate that any of the venue provisions have been

---

[5] Again, at the time the parties filed the pleadings regarding the motion to amend, the Court had not yet issued its Order on Alabama Power's and SCS's motions to dismiss.

met, as these two proposed defendants are foreign corporations, have their principal places of business out of state, and the repairs at issues were made at out-of-state plants. (Def. Georgia Power Co.'s Br. in Opp'n to Pl.'s Mot. to Am. Compl. [41] at 16.) Georgia Power anticipates that plaintiff's only possible argument that venue would be proper in the Northern District of Georgia as to Gulf or Mississippi Power would be an argument based on emissions. (*Id.*) It points out, however, that there is an emissions provision to the Act, 42 U.S.C. § 7426, but plaintiff chose not to bring the claims under this provision. (*Id.* at 17.) Plaintiff failed to respond to this argument in its reply brief.

The Court concludes that leave to amend the complaint to add claims against Gulf Power and Mississippi Power would be inappropriate.[6] The Court is unconvinced that joinder under Rule 20(c) would be proper. Further, the Court concludes that the proposed amendment would be futile as venue would be inappropriate.[7] Finally, the Court concludes that and personal

---

[6] As noted above, the motion to amend is granted as to additional claims against Georgia Power and claims against new defendant Savannah Power and Light.

[7]     As set out by defendants, the venue provision of the Clean Air Act would not provide for venue in this district as to Gulf Power or Mississippi Power for claims unrelated to emissions. *See Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985) ("If a complaint as amended is still subject to dismissal, leave to amend need not be given.")

AO 72A
(Rev.8/82)

jurisdiction is lacking.[8]   In doing so, the Court adopts the

discussion contained in its August 1, 2000 Order at pages 34-51.

(*See* Order [57] at 34-51.)

As to personal jurisdiction, the Court finds that both

specific[9] and general[10] jurisdiction over Gulf Power or Mississippi

---

[8] Personal jurisdiction is the power of the court to
summon a defendant before it to adjudicate a claim.  Before a
federal court may exercise personal jurisdiction over a
defendant it must determine whether the defendant is amenable
to service as directed by the applicable statutory authority
and then determine whether that service comports with due
process.  *Willingway Hosp. v. Blue Cross & Blue Shield*, 870 F.
Supp. 1102, 1104 (S.D. Ga. 1994) (citing *Sun Bank, N. A. v.
E.F. Hutton & Co.*, 926 F.2d 1030, 1033 (11th Cir. 1991))
(diversity case); *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d
1406, 1413 (9th Cir. 1989) (federal question case)).  This
two-step analysis was established by the Supreme Court in *Omni
Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97
(1987).  In the present case, defendants do not challenge the
amenability of Gulf Power and Mississippi Power to service of
process.  Rather, these defendants claim that such service
would not comport with due process.

[9] The Eleventh Circuit has recently reiterated the
requirements of due process:

The Due Process Clause permits a court to summon a
nonresident to defend himself in the forum so long
as that person has some "minimum contacts" with
that state and, the exercise of personal
jurisdiction over the defendant would not offend
"traditional notions of fair play and substantial
justice."  *International Shoe Co. v. Washington*,
326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95
(1945); *Williams Elec. Co. v. Honeywell*, Inc., 854
F.2d 389, 392 (11th Cir. 1988).  The nonresident
defendant's contacts with the forum must be such
that he has "fair warning" that a particular
activity may subject him to the jurisdiction of a
foreign sovereign.  *Burger King Corp. v. Rudzewicz*,
471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed.2d 528

26

Power is lacking. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8, 9 (1984) (specific jurisdiction); *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) (general jurisdiction). For specific jurisdiction to exist in the present case, plaintiff would have to establish that (1) the claims against defendants Gulf Power and Mississippi arise out of or relate to such defendants' contacts with Georgia, (2) Gulf Power and Mississippi Power "purposefully availed itself of conducting activities within [Georgia] and invoked the benefits of

---

(1985).

*Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000).

In determining whether a defendant has sufficient contacts with the forum state, a court must consider whether the contacts are related to the cause of action. "If a person has only 'minimal contacts' with the forum, the court may summon him to defend himself in that forum only so long as the cause of action is related to his specific contacts with that forum." *Ruiz de Molina*, 207 F.3d at 1357 n.4 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8, 9 (1984)). This is commonly referred to specific jurisdiction.

[10] The second type of jurisdiction--where a nonresident is summoned "to answer claims unrelated to his contacts with the forum"--is referred to as general jurisdiction. *Ruiz de Molina*, 207 F.3d at 1357 n.4. *See also Helicopteros*, 466 U.S. at 414 n.9 ("When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising 'general jurisdiction' over the defendant.") A court may exercise jurisdiction over the defendant in such a situation "so long as those contacts are *substantial, persistent, continuous and systematic*." *Id.* (emphasis added). It is much more difficult for a plaintiff to establish the requisite requirements for general jurisdiction.

27

[Georgia's] laws," and (3) Gulf Power's and Mississippi Power's "contacts must demonstrate that [they] should reasonably anticipate being haled into court in [Georgia.]" *Railcar, Ltd. v. Southern Ill. Railcar Co.*, 42 F. Supp. 2d 1369, 1372 (N.D. Ga. 1999) (Camp, J.) (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258 (11th Cir. 1996)).

Gulf Power is a Maine corporation with its principal place of business in Pensacola, Florida. (Am. Compl. [35] at ¶ 16.) Plaintiff states that Gulf Power is admitted to do business in Alabama, Florida, Georgia, and Mississippi and that it own and operates electric generating facilities in Florida, Georgia, and Mississippi; however, the Gulf Power plant at issue is located in Escambia County, Florida. (*Id.* at ¶¶ 16, 33.) Mississippi Power is a Mississippi corporation with its principal place of business in Gulfport, Mississippi. (*Id.* at ¶ 17.) Mississippi Power owns power plants in Mississippi and Alabama, but the plant at issue in this case is located in Mississippi. (*Id.* at ¶¶ 19-20.) As plaintiff's claims against Gulf Power and Mississippi address only actions taken at power plants located in Florida and Mississippi, it cannot be said that the claims arise out of or relate to their contacts with Georgia. Therefore, if jurisdiction exists, it is only general jurisdiction.

Establishing general jurisdiction is a heavy burden. "In order to assert general jurisdiction, the defendant's activity in

28

the forum must be continuous and substantial." *Sears Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1304 (D. Del. 1990) (citing *International Shoe*, 326 U.S. 310).[11]  Indeed, it appears that the only case in which a court has found general jurisdiction to exist is *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437 (1952).[12] Gulf Power's and Mississippi Power's direct contacts with Georgia simply to do not rise to the level of "continuous and systematic" set forth in *Perkins*.   In addition, as discussed in the Court's August 1, 2000 Order, the affiliates' participation in the Southern Company's integrated system, as delineated in the ICC, does not result in them "doing business" in the state of Georgia. Although Gulf Power and Mississippi Power may have contacts with the state of Georgia, this Court cannot say that, in their totality, they are continuous and systematic, or that they are of the nature indicating that these potential defendants had purposefully availed themselves of the laws of Georgia.   *See Helicopteros*, 466 U.S. at 411-12; *Hirsch v. Blue Cross, Blue*

---

[11] For a more thorough history and discussion of the doctrine of general jurisdiction, see the Court's August 1, 2000 Order at pages 43-51.

[12] The facts of *Perkins* were unusual.   Benguet was a mining company located in the Philippine Islands.   During World War II, however, operations there were halted because the Japanese occupied the Philippines. During that time, the president of Benguet, a native of Ohio, returned to Ohio to run the business. Although clearly no mining went on in Ohio, all other corporate functions were conducted from the office maintained there.

*Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986); *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055 (11th Cir. 1986); *Sea Lift, Inc. v. Refinadora Costaricense*, 792 F.2d 989, 992 (11th Cir. 1986) (holding no general jurisdiction existed where company was not engaged in "general business activity" in the forum state). Plaintiff has failed to demonstrate that the exercise of either specific or general jurisdiction is appropriate in this case as to the claims against Gulf Power and Mississippi Power.

Lastly, the Court addresses plaintiff's argument that while Gulf Power's and Mississippi Power's power plants are physically located in Florida and Mississippi, respectively, the changes made by these defendants to such plants have a detrimental effect on the quality of Georgia air. Although plaintiff may argue that these defendants' facilities caused pollution in Georgia, as discussed in the Court's August 1, 200 Order, plaintiff's claims address the modification and construction of facilities, not interstate pollution. (*See* Order [57] at 42.) Accordingly, this allegation is insufficient to convey jurisdiction.

Accordingly, plaintiff's motion for leave to amend its complaint is **GRANTED IN PART AND DENIED IN PART**. Plaintiff is instructed to file a new amended complaint in which it may amend it claims against Georgia Power as noted above and bring new claims against Savannah Power and Electric. Plaintiff, however,

30

may not bring any claims against Alabama Power, SCS, Gulf Power, or Mississippi Power in this district.

## II. Physicians for Social Responsibility, Campaign for a Prosperous Georgia, U.S. Public Interest Research Group, and Alabama Environmental Council's Motion to Intervene as Plaintiffs

These public interest groups (hereinafter "Applicants") have moved to intervene as plaintiffs in this lawsuit. (Mot. to Intervene as Pls. [38].) Applicants argue that they have a statutory right to intervene under Federal Rule of Civil Procedure 24(a), but if the Court concludes that they do not, they move in the alternative for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). The Government has stated that it has no opposition to the intervention. (U.S.'s Stm't of No Opp'n to Mot. to Intervene [45].) Both Georgia Power and Alabama Power,[13] however, objected to the motion. (Georgia Power Co.'s Mem. in Supp. of Opp'n to Mot. for Intervention [49]; Alabama Power Co.'s Mem. in Opp'n to Mot. for Intervention [50].)

### A. Intervention as of Right

Federal Rule of Civil Procedure 24 reads, in relevant part:

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the

---

[13] As noted above, Alabama Power is no longer a party to this action.

31

> action may as a practical matter impair or impede the
> applicant's ability to protect that interest, unless the
> applicant's interest is adequately represented by
> existing parties.

Fed. R. Civ. P. 24(a). The Applicants claim that their
application was timely and, as they meet both the requirements of
subsection (1) and (2), they are entitled to intervene as of
right. They state that the litigation is in an early stage and
the parties therefore would not be prejudiced by intervention at
this point. (Mot. to Intervene as Pls. [38] at 3-4.) As there
has been no significant legal action in the case yet, the Court
agrees that the motion to intervene is timely.

The next question is whether the Applicants meet the
requirements of Rule 24(a)(1) or (2). Applicants claim that they
meet both. First, they claim that the Clean Air Act gives them an
unconditional right to intervene under its "citizen suit
provision," 42 U.S.C. § 7604. (Id. at 4.) Section 7604(a) reads,
in part:

> Except as provided in subsection (b) of this section,
> any person may commence a civil action on his own
> behalf--
>
> (1) against any person (including (i) the United States,
> and (ii) any other governmental instrumentality or
> agency to the extent permitted by the Eleventh Amendment
> to the Constitution) who is alleged to have violated (if
> there is evidence that the alleged violation has been
> repeated) or to be in violation of (A) an emission
> standard or limitation under this chapter or (B) an
> order issued by the Administrator or a State with
> respect to such a standard or limitation,
>
> (2) against the Administrator where there is alleged a

32

failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator, or

(3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I of this chapter (relating to significant deterioration of air quality) or part D of subchapter I of this chapter (relating to nonattainment) or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

42 U.S.C. § 7604(a) (emphasis added).  Subsection (b) provides a

limitation, however:

No action may be commenced--

(1) under subsection (a)(1) of this section--

(A) prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right.

(2) under subsection (a)(2) of this section prior to 60 days after the plaintiff has given notice of such action to the Administrator,
except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of section 7412(i)(3)(A) or (f)(4) of this title or an order issued by the Administrator pursuant to section 7413(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

33

42 U.S.C. § 7604(b) (emphasis added). Accordingly, the Applicants claim that while they are restricted from bringing a separate suit, under § 7604(b)(1)(B), they have the right to intervene as plaintiffs in the Government's suit because the Government's claims involve "emissions limitations." (Mot. to Intervene as Pls. [38] at 4-5.)

"Emission limitation or standard" is defined generally by the Act as:

> a requirement established by the State or the Administrator which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction, and any design, equipment, work practice or operational standard promulgated under this chapter.

42 U.S.C. § 7602(k). Under the citizen suit provision, however, the definition is expanded to include, in relevant part:

> (1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard, . . . or
> (3) any condition or requirement of a permit under part C of subchapter I of this chapter (relating to significant deterioration of air quality) or part D of subchapter I of this chapter (relating to nonattainment), section 7419 of this title (relating to primary nonferrous smelter orders), any condition or requirement under an applicable implementation plan relating to transportation control measures, air quality maintenance plans, vehicle inspection and maintenance programs or vapor recovery requirements, section 7545(e) and (f) of this title (relating to fuels and fuel additives), section 7491 of this title (relating to visibility protection), any condition or requirement under subchapter VI of this chapter (relating to ozone protection), or any requirement under section 7411 or 7412 of this title (without regard to whether such

34

requirement is expressed as an emission standard or otherwise).

42 U.S.C. § 7604(f)(1) & (3).

The Applicants contend that both the alleged violations of the PSD provisions and of the NSPS provisions fall within the ambit of the citizen suit's provision's expanded definition of an emission limitation or standard. (Mot. to Intervene [38] at 5-6.) Georgia Power appears to concede that the Applicants may have a statutory right to intervene under 42 U.S.C. § 7604(a)(1) as to the NSPS allegations, but they state that the alleged PSD violations do not involve emissions standards. (Georgia Power Co.'s Mem. in Supp. of Opp'n to Mot. for Intervention [38] at 5-6.) Applicants counter that Georgia Power's interpretation of the definition of emissions limitation or standard is overly restrictive. (Reply Mem. in Supp. of Mot. for Intervention [53] at 2-6.) The issue in dispute between the parties appears to be whether the term Best Available Control Technology/BACT, as used in the PSD provisions, should be construed as an emission limitation or standard.

Applicants contend it should, arguing that it is explicitly defined as such:

> The term "best available control technology" means an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under this chapter emitted from or which results from any major emitting facility, which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs,

> determines is achievable for such facility through application of production processes and available methods, systems, and techniques, including fuel cleaning, clean fuels, or treatment or innovative fuel combustion techniques for control of each such pollutant. In no event shall application of "best available control technology" result in emissions of any pollutants which will exceed the emissions allowed by any applicable standard established pursuant to section 7411 or 7412 of this title. Emissions from any source utilizing clean fuels, or any other means, to comply with this paragraph shall not be allowed to increase above levels that would have been required under this paragraph as it existed prior to enactment of the Clean Air Act Amendments of 1990.

42 U.S.C. § 7479(3). Georgia Power, on the other hand, argues that a BACT is not an emission limitation because BACT determinations are made on a case-by-case basis.

Georgia Power further argues that PSD violations cannot be brought under § 7604(a)(1) because PSD claims are explicitly covered by § 7604(a)(3).[14] Applicants claim that just because the Act allows for PSD claims under (a)(3) does not mean that such claims cannot also be pursued under (a)(1). Applicants state that the purpose of (a)(3) is to allow such claims without the notice required under (a)(1) or (2).

The Applicants' second argument for intervention as of right is that they meet the requirements of Rule 24(a)(2) because (1) they have an interest relating to the property or transaction, (2) they are so situated that the disposition of the action may as a

---

[14] Applicants cannot intervene as to claims under § 7604(a)(3) because § 7604(b)(1)(B) provides no right to do so.

AO 72A
(Rev.8/82)

practical matter impair or impede their ability to protect that interest, and (3) the Government does not adequately represent their interest.   The Applicants contend that under *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972), Rule 24(a)(2)'s requirements of inadequate representation "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Id.* at 538 n.10.   Georgia Power contends that although this may be the general rule, in cases where the government is already a party, the burden of establishing that a party's interest are not adequately represented is higher.   This is the rule espoused by the Second Circuit in *United States v. Hooker Chemicals and Plastics Corp.*, 749 F.2d 968, 985 (2d Cir. 1984).   ("Under the parens patriae concept, however, a state that is a party to a suit involving a matter of sovereign interest is presumed to represent the interests of all its citizens.   Thus, to intervene in a suit in district court in which a state is already a party, a citizen or subdivision of that state must overcome this presumption of adequate representation.   A minimal showing that the representation may be inadequate is not sufficient.   The applicant for intervention must demonstrate that its interest is in fact different from that of the state and that that interest will not be represented by the state.")   The Applicants counter that *Hooker* is not the law of this Circuit and that it is

37

distinguishable because the intervenor therein did not have an independent right to sue and the government had objected to the intervention. (Reply Mem. in Supp. of Mot. for Intervention [53] at 7-8.)

Applicants urge the Court to find that they have a statutory right to intervene because their interests and that of the government are likely to diverge

> regarding issues such as money expended to defend the existing system and vulnerability to political forces in deciding litigation strategy, *Meek v. Metro. Dade County,* 985 F.2d 1471, 1478 (11th Cir. 1993), and a potential greater willingness to compromise due to these and other factors. *Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999).

(Mot. to Intervene [38] at 13.) Further, Applicants maintain that the Government represents a much broader interest, as it also represents the interests of industry. (*Id.*)

Georgia Power argues, however, that under the doctrine of *parens patriae*,[15] there is a presumption that the Government

---

[15] Parens patriae is defined by Black's Law Dictionary as follows:

> "Parens patriae," literally "parent of the country," refers traditionally to role of state as sovereign and guardian of persons under legal disability, such as juveniles or the insane . . . and in child custody determinations, when acting on behalf of the state to protect the interests of the child. It is the principle that the state must care for those who cannot take care of themselves, such as minors who lack proper care and custody from their parents. It is a concept of standing utilized to protect those quasi-sovereign interests such as health, comfort and welfare of the people,

38

adequately represents the interests of this citizens, and the Applicants have not overcome this presumption. Georgia Power also argues that the cases cited by Applicants, *Meek* and *Clark*, are distinguishable because they both arose under the Voting Rights Act and, in both cases, the Eleventh Circuit concluded that the county commissioners, who represented all voters--black and white--could not adequately represent a group of voters with a racially identifiable agenda.   Georgia Power also argues that the Applicants have failed to carry their burden in rebutting the presumption of adequate representation.   This should involve an inquiry into such factors as whether there is collusion between the representative and an opposing party, whether the representative has an interest adverse to that of the proposed intervenor, and whether the representative has failed to fulfill its duties.   *See, e.g., United States v. United States Steel Corp.*, 548 F.2d 1232, 1236 (5th Cir. 1977).   Georgia Power again encourages the Court to hold that there is a more demanding showing required by an intervenor when the plaintiff is the government acting in the role of parens patriae.   Georgia Power contends that the Applicants' vague allegations of the Government's vulnerability to "political forces" or a "potential

---

      interstate water rights, general economy of the
state, etc.

39

difference" in litigation strategy are insufficient to make the required showing.

B.   Permissive Intervention

In the alternative, the Applicants ask the Court to grant their motion for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(2).  Rule 24(b) reads, in relevant part:

> (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b).  It is within the sound discretion of the district court whether to allow intervention under Rule 24(b)(2). *Chiles v. Thornburgh,* 865 F.2d 1197, 1213 (11th Cir. 1989) ("A party seeking to intervene under Rule 24(b)(2) must show that: (1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common.   The district court has the discretion to deny intervention even if both of those requirements are met, and its decision is reviewed for an abuse of discretion. *Sellers v. United States,* 709 F.2d 1469, 1471 (11th Cir. 1983).

As to permissive intervention, Georgia Power argues it should be denied because the nature of the claims are duplicative and will only lead to undue delay, burden, and expense in relation to

40

the minimal benefit it may bring. Georgia Power suggests that if the Court were to allow intervention, either as of right or permissive, the Court should limit the Applicants' participation. (Georgia Power Co.'s Mem. in Supp. of its Opp'n to Mot. for Intervention [49] at 16.) Georgia Power states that with conditions, it would not oppose intervention. Georgia Power contends that restrictions are appropriate whether intervention is as of right or permissive. Indeed, the Supreme Court has specifically addressed the imposition of restrictions in a permissive intervention case, see *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987), and the Eleventh Circuit has indicated that restrictions in a permissive intervention case could be appropriate as well. *See United States v. South Fla. Water Management Dist.*, 922 F.2d 704, 710 & n.9 (11th Cir. 1991) ("On remand, the District Court may choose to condition their intervention in this case on such terms as will be consistent with the fair, prompt conduct of this litigation. . . . 'An intervention of right . . . may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of proceedings.' Fed. R. Civ. P. 24(a) advisory committee's notes to 1966 amendments.'").

Georgia Power has suggested the following restrictions:

- Applicants may have access to discovery initiated by the original parties but should not be allowed to initiate or conduct discovery independent from the Government;

41

- Applicants may be allowed to attend depositions but only one party (either the Government or Applicants) may participate by asking questions;

- Applicants should be restricted from filing any duplicative pleadings or motions in the case;

- Applicants should be required to confer with the Government before filing any pleadings or motions in the case to confirm they are not duplicative; and

- Applicants' statutory intervention on the NSPS claims should be strictly limited to the Government's allegations regarding NSPS violations because those are the only allegations involving an "emission standard or limitation" as that term is defined under the citizen suit provision of the Act.

(Georgia Power Co.'s Mem. in Supp. of Opp'n to Mot. for Intervention [49] at 18-19.)  The Applicants are opposed to such restrictions because they say that they do not know at this time if they will need to conduct their own discovery.  They state that their promise that they will always consult with the Government before conducting discovery or filing pleadings should be sufficient to allay Georgia Power's concerns that it may otherwise be unduly burdened by their participation in the case.

The Court is unconvinced that Applicants have a statutory right to intervene under Fed. R. Civ. P. 24(a)(1) on any claims other than those related to the alleged NSPS violations.  As to intervention by right under Fed. R. Civ. P. 24(a)(2), the Applicants have made only unsupported allegations that the Government will not adequately represent their interests, and it

42

is doubtful that the Court would allow intervention as of right under subsection (a)(2) either.  The Court need not reach that question, however, because it concludes that some participation by Applicants, whether as of right or permissive, is appropriate. The Court agrees with Georgia Power, however, that it is appropriate to place restrictions on the Applicants' involvement to ensure that neither Georgia Power nor the Court are overburdened by the addition of more litigants, where it appears that the majority of the Applicants' concerns are duplicative of those of the Government. Accordingly, Applicants may intervene as to all of the claims that survive in plaintiff's amended complaint; however, the following restrictions apply to Applicants' participation:

- Applicants may have access to discovery initiated by the original parties but should not be allowed to initiate or conduct discovery independent from the Government;

- Applicants may be allowed to attend depositions but only one party (either the Government or Applicants) may participate by asking questions;

- Applicants shall be restricted from filing any duplicative pleadings or motions in the case; and

- Applicants shall be required to confer with the Government and each other before filing any pleadings or motions in the case to confirm they are not duplicative.  Only one consolidated pleading may be filed by Applicants on any matter

for which such a pleading would not be
duplicative.[16]

### CONCLUSION

For the foregoing reasons, the Court finds that plaintiff's
Motion for Leave to File Amended Complaint [35] is **GRANTED IN PART
AND DENIED IN PART** and Physicians for Social Responsibility,
Campaign for a Prosperous Georgia, U.S. Public Interest Research
Group, and Alabama Environmental Council's Motion to Intervene as
Plaintiffs [38] is **GRANTED WITH RESTRICTIONS**. Plaintiff is
instructed to refile its amended complaint, limiting its claims to
those brought against Georgia Power and Savannah Power and
Electric.

SO ORDERED, this ___ day of March, 2001.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

---

[16] In a case that will likely involve voluminous pleadings
and documents, it is a tremendous burden on the Court to be
required to read duplicative pleadings.  The Court fully
expects that plaintiff, who is well staffed and conversant on
these issues, will file briefs and pleadings that are more
than adequate.  The Court envisions Applicant's role, for the
most part, as one of monitoring the litigation.  To the extent
that applicants' participation creates an undue burden on the
Court or parties, the Court reserves the right to review its
decision to allow permissive intervention.