UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| Plaintiff, | § |
| | § |
| STATE OF KANSAS | § |
| | § |
| Plaintiff-Intervenor, | § Civil Action No. 09-CV-2059 JAR/DJW |
| | § |
| v. | § |
| | § |
| WESTAR ENERGY, INC. | § |
| | § |
| Defendant. | § |

## COMPLAINT IN INTERVENTION

The State of Kansas, Department of Health and Environment, by and through its legal counsel, Yvonne C. Anderson, hereby files its Complaint against Defendant Westar Energy, Inc. and states and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action brought by the State of Kansas pursuant to 28 U.S.C. § 1367 and the Kansas Air Quality Act (KAQA), Kan. Stat. Ann. § 65-3001, et. seq. against Westar Energy, Inc. ("Westar").

2. The State of Kansas alleges that on multiple occasions between 1994 and the present, Westar modified and thereafter operated three generating units at the Jeffrey Energy Center, a coal-fired electric power plant in St Marys, Pottawatomie County, Kansas, without first obtaining appropriate permits authorizing this construction and without installing and employing the best available control technology ("BACT") to control emissions of sulfur dioxide, nitrogen oxides, and particulate matter as required by the Kansas Air Quality Act.

3.  As a result of Westar's operation of these unlawfully modified electric generating units without appropriate pollution controls, massive amounts of sulfur dioxide, nitrogen oxides, and particulate matter have been, and still are, being released into the atmosphere.

4.  Sulfur dioxide ("$SO_2$"), nitrogen oxides ("$NO_x$"), and particulate matter ("PM"), when emitted into the air, can each adversely impact the environment and human health. Electric utility plants like Westar's collectively account for roughly 70 percent of annual $SO_2$ emissions and 20 percent of $NO_x$ emissions in the United States. $SO_2$ interacts with other chemicals in the atmosphere to form sulfate aerosols, which can be transported long distances. In the eastern United States, sulfate aerosols make up about 25 percent of all inhalable particles and according to recent studies, high levels of sulfate aerosols in the air are associated with increased sickness and mortality from lung disorders, such as asthma and bronchitis. Lowering sulfate aerosol emissions from electric utility plants may significantly reduce the incidence and severity of asthma and bronchitis and the hospital admissions and emergency room visits resulting from these ailments.

5.  Nitrogen oxides have numerous adverse effects on health and welfare. $NO_x$ reacts with other pollutants and sunlight to form ground-level ozone, which scientists have long recognized as harmful to human health and the environment. Ozone can inflame and potentially cause permanent damage to human lungs, triggering respiratory problems and decreasing lung capacity, especially among children who are active outdoors. In addition, ozone can damage vegetation. Nitrogen dioxide ("$NO_2$"), a type of $NO_x$, is a dangerous pollutant that can cause people to have difficulty breathing by constricting lower respiratory passages. It can also weaken a person's immune system, causing increased susceptibility to pulmonary and other forms of infections. While children and asthmatics are the most sensitive, individuals suffering

2

from bronchitis, emphysema, and other chronic pulmonary diseases also have a heightened sensitivity to $NO_2$ exposure. $NO_x$ also reacts with other pollutants and sunlight to form photochemical smog, which in turn contributes to haze and reduces visibility.

6. $SO_2$ and $NO_x$ interact in the atmosphere with water and oxygen to form sulfuric and nitric acids, commonly known as acid rain. Acid rain, which also comes in the form of snow or sleet, "acidifies" lakes and streams, rendering them uninhabitable for aquatic life, and it contributes to tree damage at high elevations. Acid rain accelerates the decay of building materials and paints, including irreplaceable buildings, statues, and sculptures that are part of our nation's cultural heritage. $SO_2$ and $NO_x$ gases and their particulate matter derivatives, sulfates and nitrates, contribute to visibility degradation and adversely impact public health.

7. Particulate matter, or "PM," is the term for solid or liquid particles found in the air. Smaller PM of a diameter of 10 micrometers or less is referred to as $PM_{10}$. Power plants are a major source of PM. Breathing PM at concentrations in excess of existing ambient air standards may damage lung tissue and increase the chances of respiratory disease, cancer, and premature death. The elderly, children, and people with chronic lung disease, influenza, or asthma, are especially sensitive to the effects of PM. PM can also reduce visibility and damage man-made materials.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. § 1391(b) and (c), because the violations that are the subject of

this Complaint occurred and are occurring in this District, and the facility at issue is operated by Defendant in this District.

## PARTIES

10. The State of Kansas, Department of Health and Environment (KDHE) is the executive branch agency authorized by statute to administer and enforce the KAQA and the rules and regulations promulgated thereunder.

11. Westar is an owner and operator of the Jeffrey Energy Center, a coal-fired electric power plant located in Pottawatomie County, Kansas. The Jeffrey Energy Center generates electricity using three steam generating boilers which are designated Jeffrey units one through three.

12. Westar is incorporated under the laws of the state of Kansas, and is a "person" subject to the KAQA pursuant to Kan. Stat. Ann. § 65-3002.

## STATUTORY AND REGULATORY BACKGROUND

13. The KAQA provides broad powers to the secretary of KDHE to prevent, abate, limit, and reduce air quality pollution, to seek injunctive relief and issue orders for these purposes and to assess civil penalties for violations of the air quality statutes and regulations and air quality permit requirements. Kan. Stat. Ann. § 65-3001 et. seq.

14. The KDHE administers and enforces the KAQA including the ambient air quality statutes and regulations adopted therein and the permits issued to ensure compliance with those standards. These requirements for compliance follow or specifically adopt by reference the federal statutory and regulatory scheme set forth in the Clean Air Act (CAA) 42 U.S.C. § 7401 et. seq., and as set forth in the Complaint of the United States in Paragraphs 14-33 which are incorporated herein by reference.

15. The State of Kansas Implementation Plan (SIP), implementing the CAA was submitted to the Environmental Protection Agency (EPA) pursuant to Section 110 of the CAA has been approved by the EPA. In addition, the State of Kansas has adopted the New Source Performance Standards. The EPA has delegated authority to the State of Kansas to implement and enforce the same.

16. The State of Kansas has been classified as attainment for all pollutants except for Wyandotte and Johnson counties which are currently under a maintenance plan as a result of a previous nonattainment designation for ozone.

17. As it relates to the allegations in this complaint, the State of Kansas has adopted requirements for (1) permitting for construction and modification of air emission sources; (2) prevention of significant deterioration requirements; (3) new source performance standards; and (4) emission standards for hazardous air pollutants all of which are required by the CAA.

## GENERAL ALLEGATIONS

18. At all times pertinent to this civil action, the Jeffrey Energy Center was a "major emitting facility" and "major stationary source" within the meaning of the KAQA for $NO_x$, $SO_2$, PM, and $PM_{10}$.

## FIRST CLAIM FOR RELIEF
( PSD Violations)

19. Paragraphs 1 through 18 are realleged and incorporated herein by reference.

20. At various times, Westar commenced construction and operation of major modifications, as defined in the KAQA and the Kansas SIP, at the Jeffrey Energy Center. These modifications included physical changes or changes in the method of operation at each of the three Jeffrey Energy Center units, including: (1) replacing the front reheater and lower final superheater on Jeffrey unit 2 in 1994; (2) replacing the final superheater on Jeffrey unit 1 in

5

1995; (3) replacing the front reheater and final superheater on Jeffrey unit 3 in 1997; (4) replacing the economizer on Jeffrey unit 1 in 1999; and (5) replacing the economizer on Jeffrey unit 2 in 1999. These modifications resulted in significant net emissions increases, as defined by the Kansas SIP, of $SO_2$, $NO_x$, PM, and/or $PM_{10}$.

21. Westar violated and continues to the Kansas KAQA and the Kansas SIP by, among other things, undertaking such modifications and continuing to operate the Jeffrey modified units without: (a) obtaining a PSD permit as required by the Kansas SIP; and (b) applying BACT for $SO_2$, $NO_x$, PM, and $PM_{10}$, as required by the Kansas SIP.

22. Unless restrained by an order of this Court, these and similar violations of the KAQA will continue.

23. Any person who violates any provision of the KAQA, any regulation adopted thereunder or any air quality permit issued under the act is subject to civil penalties not to exceed ten thousand dollars ($10,000) for each violation for each day during which the violation continues, an injunctive action, or both. Kan. Stat. Ann. §§ 65-3011, 65-3012, 65-3018, and 65-3025.

### SECOND CLAIM FOR RELIEF
(Title V Violations)

24. Paragraphs 1 through 23 are realleged and incorporated herein by reference.

25. As set forth above, Westar commenced one or more major modifications at the Jeffrey Energy Center, as defined under PSD regulations in the Kansas SIP. As a result, these modifications triggered the requirements to, *inter alia*, undergo a BACT determination, to obtain a PSD permit establishing emissions limitations that meet BACT pursuant to such a determination, and to operate in compliance with such limitations. Defendant failed to satisfy these requirements.

26. Subsequently, Westar failed to complete an application for a Title V operating permit for the Jeffrey Energy Center that identified all applicable requirements, that accurately certified compliance with such requirements, and that contained a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT). Defendant Westar failed to obtain a proper or adequate Title V operating permit for the Jeffrey Energy Center that contained emissions limitations for $SO_2$, $NO_x$, PM, and/ or $PM_{10}$ that meet BACT. Defendant thereafter operated the Jeffrey Energy Center without meeting such limitations and without having a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance. Defendant's conduct violated the Kansas Title V operating permit program regulations K.A.R. 28-19-500 through 518. Unless restrained by an order of this Court, these and similar violations will continue.

27. Any person who violates any provision of the KAQA, any regulation adopted thereunder or any air quality permit issued under the act is subject to civil penalties not to exceed ten thousand dollars ($10,000) for each violation for each day during which the violation continues, an injunctive action, or both. Kan. Stat. Ann. §§ 65-3011, 65-3012, 65-3018, and 65-3025.

## PRAYER FOR RELIEF

WHEREFORE, based upon the allegations contained in paragraphs 1 through 46 above, the State of Kansas requests that this Court:

1. Permanently enjoin Westar from operating the Jeffrey Energy Center, except in accordance with the KAQA and any applicable regulatory requirements;

2. Order Westar to remedy its past violations by, among other things, requiring Defendant to install and operate, as appropriate, the best available control technology at the Jeffrey Energy Center for each pollutant subject to regulation under the KAQA;

3. Order Westar to apply for permits that are in conformity with the requirements of the Kansas PSD and Title V programs;

4. Order Westar to conduct audits of its operations to determine if additional modifications have occurred which would require it to meet the requirements of the Kansas PSD program and report the results of these audits to the State of Kansas

5. Order Westar to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the KAQA and Clean Air Act alleged above;

6. Assess civil penalties against Westar for up to the maximum amounts provided under the applicable statutes;

7. Award the State of Kansas its costs of this action; and

8. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

PLAINTIFF-INTERVENOR
STATE OF KANSAS

s/ Yvonne C. Anderson
Yvonne C. Anderson
Bar No. 12636
Kansas Department of Health and Environment
1000 SW Jackson, Suite 560
Topeka, Kansas 66612-1366
yanderson@kdheks.gov
785.296.1334
Fax: 785.296.7119

## REQUEST FOR PLACE OF TRIAL

Pursuant to D. Kan. Rule 40.2, Plaintiff United States of America requests that this action be placed on the docket for trial in Kansas City, Kansas.

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of December, 2009, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/
Yvonne Anderson